Robert J. Murphy, Jr., et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued September 15, 1982, before President Judge CRUMLISH, JR. and Judges BLATT and DOYLE, sitting as a panel of three.

*Jack M. Stover, Shearer, Mette & Woodside,* for petitioners.

*John A. Alzamora,* with him *Takashi A. Bufford,* Assistant Counsel, and *Michael A. Davis,* Chief Counsel, for respondents.

OPINION BY JUDGE DOYLE, May 27, 1983:

This is an appeal by Robert J. Murphy, Jr. and Ann N. Murphy (Appellants) on behalf of their learning disabled son, Robert, from the order of the Secretary of Education (Secretary) which adopted the recommendation of a hearing officer placing Robert at the Wordsworth Academy (Wordsworth), a private school located in Pennsylvania. Appellants, who argue that there does not exist, within Pennsylvania, an appropriate program of education for their son, seek placement of Robert at the Landmark School (Landmark), an out-of-state school. Appellants also seek reimbursement of tuition monies paid for Robert's education at Landmark. Following a thorough review of the record, we reverse and remand the order of the Secretary.

Robert, a resident of the Towanda Area School District (District) is an "exceptional person"[1] who was enrolled in the District's schools from kindergarten through seventh grade. Since the third grade, Robert had participated in the District's program for the learning disabled. Appellants, however, were disappointed with Robert's progress and therefore removed him from the District's schools. Robert spent his eighth and ninth grades at different parochial schools. Thereafter, Appellants became aware of Landmark, a school for learning disabled and multihandicapped children located in Massachusetts. Robert has been continuously enrolled at Landmark since the 1980 summer session. During the Spring of 1980, Appellants sought approval of the out-of-state placement at Landmark. Following a review by District personnel, a No-

---

[1] Exceptional persons are defined as:

Persons of school-age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational programs, facilities, or services. . . .

22 Pa. Code §13.1.

tice of Recommended Assignment (NORA) was issued recommending that Robert be placed at Wordsworth which is specifically approved for tuition reimbursable special education of both learning disabled and emotionally disturbed adolescents. Appellants rejected this recommendation, and requested an administrative hearing to test the validity of the District's recommendation. Following a June 2, 1981 hearing, the hearing officer rendered an interim decision on July 20, 1981 wherein he recommended that an Individualized Educational Plan[2] (IEP) be established for Robert. On September 10, 1981, Robert's IEP was established by a team which included Appellants and representatives of the District. Based upon this IEP, the District reiterated the original recommendation that Robert be placed at Wordsworth. On October 5, 1981, the hearing officer issued a final decision which supported the

_____

[2] In accordance with 22 Pa. Code §341.15, an Individualized Education Program for persons assigned to a special education program shall include:

(1) a statement of the present level of educational performance of the person;

(2) a statement of annual goals which describes the expected behaviors to be achieved through the implementation of the Individualized Education Program of the person;

(3) a statement of short-term instructional objectives;

(4) a statement of specific educational services to be provided to the child, including a description of all special education and related services required to meet the unique needs of the child, any special instructional media and materials to be provided; and the type of physical education program in which the child will participate;

(5) a description of the extent to which the child will be able to participate in regular education programs;

(6) the projected date for initiation and the anticipated duration of services; and

(7) appropriate objective criteria, evaluation procedures, and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved.

recommended placement of Robert at Wordsworth. Appellants filed timely exceptions to the hearing officer's initial and final reports. On January 20, 1982, the Secretary entered an order dismissing Appellants' exceptions and adopting the recommended order of the hearing officer. Appeal to this Court followed.

We must affirm the order of the Secretary unless a violation of constitutional rights has occurred, an error of law has been committed, or the findings of fact are not supported by substantial evidence. *West Chester Area School District v. Secretary of Education,* 43 Pa. Commonwealth Ct. 14, 401 A.2d 610 (1979).

All handicapped school-aged persons are entitled to an appropriate program of education or training. 22 Pa. Code §13.11(a). An ''appropriate program'' is defined as:

A program of education or training for exceptional school-aged persons *which meets their individual needs* as agreed to by a parent, school district, or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education. (Emphasis added.)

22 Pa. Code §13.1. We find that the conclusion that Wordsworth can provide an appropriate program of education for Robert is not supported by substantial evidence.

Following the June 2nd hearing, the hearing officer concluded that a finding concerning the appropriateness of an educational program could not be made due to the absence of an IEP for Robert. The hearing officer commented that a recommended placement only has meaning when viewed from the perspective of the IEP. In fact, the testimony reveals that Wordsworth was recommended not because it met Robert's individual needs, but rather because it was the only school with a residential component that would consider Rob-

ert.[3] After Robert's IEP had been developed, the District again recommended placement at Wordsworth, and Appellants again rejected this recommendation. By agreement, the hearing was not reconvened. Instead, the hearing officer was asked to make a final disposition based upon the prior testimony and the introduction of four additional documents. The hearing officer concluded that Wordsworth could provide an appropriate educational program.

Since the prior testimony was insufficient to support a finding concerning the appropriateness of the educational program, the conclusion regarding the Wordsworth program must be based upon the four additional documents received by the hearing officer. These documents include: Robert's IEP, a letter from the Appellants, a letter from the Educational Director at Wordsworth, and a memorandum from the District's Superintendent. The IEP, as a neutral document describing Robert's situation and goals, cannot support any particular program. Secondly, Appellants' letter rejects placement of Robert at Wordsworth. Therefore, the only information which tended to support the hearing officer's conclusion was contained in the letter from Michael J. Curcio, the Educational Director at Wordsworth, dated September 17, 1981, and in the memorandum from Thomas Holland, Superintendent of the District, dated September 22, 1981. Mr. Curcio stated: "This letter is to indicate that Wordsworth Academy would be able to implement the I.E.P. for Robert Murphy which we reviewed together on Tuesday, 9/15/81." This bare statement is the only evidence which supports the hearing officer's decision. The memorandum from Superintendent Holland states that two members of Robert's IEP team visited

---

[3] Apparently, Robert's age (sixteen and a half) and his handicap (brain damage) make him unacceptable at other private schools in Pennsylvania.

Wordsworth, but it does not contain any independent statement, observation, or conclusion or recommendation of these District personnel regarding the ability of Wordsworth to implement the IEP. Certainly, the professional educators who helped develop Robert's IEP and visited Wordsworth should have been able to offer their opinion concerning the appropriateness of the Wordsworth program. Instead, the Superintendent's memorandum merely expresses the conclusion of Mr. Curcio that "Wordsworth Academy has indicated that they can implement the IEP as developed."

Substantial evidence is that relevant evidence which a reasonable mind can accept as adequate to support a conclusion. *Blascovich v. Board of School Directors of Shamokin Area School District,* 49 Pa. Commonwealth Ct. 131, 410 A.2d 407 (1980). We do not believe that Mr. Curcio's singular, one-sentence statement is adequate to support the conclusion that Wordsworth can implement an educational program which will meet Robert's individual needs. In reaching this result, we have examined several decisions where we reviewed a hearing officer's conclusion about appropriate educational programs. Consider, for example, *Silvio v. Department of Education,* 64 Pa. Commonwealth Ct. 192, 439 A.2d 893 (1982), where the findings of the hearing officer were supported by testimony from the Director of the Division for Exceptional Children, the supervisor of the program for hearing impaired children, the speech and language specialist for the hearing impaired, an audiologist and a full-time teacher of the hearing impaired, In *Krawitz v. Department of Education,* 48 Pa. Commonwealth Ct. 155, 408 A.2d 1202 (1979), the findings are supported by the testimony of a psychologist for the intermediate unit and the director of special education. In *Savka v. Department of Education,* 44 Pa. Commonwealth Ct. 62, 403 A.2d 142 (1979), several witnesses supported the

hearing officer's findings. Finally, in *Shanberg v. Secretary of Education,* 57 Pa. Commonwealth Ct. 384, 426 A.2d 232 (1981), the findings were supported by the testimony of various professional personnel. In the case at bar, Mr. Curcio's one sentence assertion is the only evidence correlating Robert's IEP with the Wordsworth program. Standing alone, this evidence is inadequate to support the conclusion reached by the Secretary.

Appellants also argue that their due process rights were violated when the hearing officer considered an ex parte communication in reaching the recommendation which became the subject of the Secretary's order. In what became his final decision, the hearing officer states:

> *Additional Information Requested:*
>
> In order to clarify specific admission procedures, this Hearing Officer contacted Mr. Curcio at Wordsworth by phone. Mr. Curcio, from reviewing existing information, was confident that the IEP will be able to be implemented. There are, however, further steps to be taken prior to an actual admission. . . .

We agree that Appellant's rights were violated. "Due process requires that cross-examination be afforded in administrative agency hearings." *Shanberg* at 387, 426 A.2d at 233. Furthermore, the hearing officer's need to request additional, non-record evidence is consistent with our finding that there is inadequate evidence to support a conclusion concerning the appropriateness of the educational program at Wordsworth.

There is no question that Robert is an exceptional student in need of special education services. Based upon neurological, psychological and educational reports, the hearing officer concluded that Robert is brain damaged (as defined by 22 Pa. Code §341.1 (i)) and speech and language impaired (as defined by

506

22 Pa. Code §341.1(ix)). Neither the District, nor the Intermediate Unit, however, are able to provide an appropriate program of education. Since, as we have previously stated, the record does not support the hearing officer's finding that Wordsworth can offer Robert an appropriate program of education, this Court must remand this matter for further proceedings to select an "appropriate" program of education for Robert. In so doing, we note that testimony was adduced at the previous hearing which indicates that Wordsworth is the *only* in-state school which will consider Robert.[4] Accordingly, it is quite conceivable, if not likely, that there is no school within the Commonwealth offering an "appropriate" program of education in which Robert may be placed. We therefore direct the Secretary, in the additional proceedings to select such a program, to consider out-of-state programs, including the Landmark School, where Robert may be placed as well as those in-state. *See* 22 Pa. Code §13.12.

## ORDER

Now, May 27, 1983, the order of the Secretary of Education, dated January 20, 1982, concerning Special Education Opinion No. 189 is hereby reversed and remanded for further proceedings not inconsistent

---

[4] In pertinent part, an exchange between the hearing officer, Mr. Lee, and Robert Lent, Director of Special Education for the Intermediate Unit, provided as follows:

Lee: Did you in fact or did you not consider other schools or contact other schools?

Lent: I did and Wordsworth was the only school that had the residential component of the age level we are talking about for the brain damaged individual.

. . .

Lee: Are you then saying that as far as you know Wordsworth is the only school in the state of Pennsylvania that would consider someone like Robert?

Lent: To the best of my knowledge that is so.

with this opinion. Said proceedings are to be completed and a decision rendered within sixty days from the date of this order. Jurisdiction with regard to the merits is relinquished.