Kyle Russel PICONE, a minor by and through his natural parents and guardians, Anthony Picone and Kimberly Picone, his wife, Appellants

v.

BANGOR AREA SCHOOL DISTRICT and Board of School Directors of the Bangor Area School District.

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.
Decided Nov. 15, 2007.

Anthony J. Martino, Bangor, for appellants.

Donald F. Spry, II, Bethlehem, for appellees.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Kyle Russel Picone, a minor by and through his natural parents and guardians, Anthony Picone and Kimberly Picone, his wife, (Student) appeals from the February 16, 2007, order of the Court of Common

Pleas of Northampton County (trial court), which affirmed the decision of the Board of School Directors (School Board) of the Bangor Area School District (School District) expelling Student until the end of the third marking period and requiring Student to fulfill certain conditions for readmission. We affirm.

The facts, as found by the School Board, are as follows. On December 13, 2006, shortly after 2:30 p.m., Student was in his automobile in the high school parking lot preparing to drive two other students to the middle school for basketball practice. One of the other students noticed a box of pellets in the car and asked Student about the pellets. Student picked up a soft air pellet gun that was alongside his seat and showed it to the other students. Student decided to demonstrate how it worked. Student noticed his girl friend walking across the parking lot toward his car, pointed the pellet gun at her through an open window and fired the gun. The pellet struck Student's girl friend in the thigh. As his girl friend walked past the car, Student apologized to her.

Student's girl friend, who was wearing gym shorts, entered the gym lobby upset and with tears in her eyes. When she saw a teacher, she told him that Student shot her in the leg with a BB gun, and she showed the teacher the welt on her thigh. Student later admitted to his basketball coach that he shot his girl friend with a pellet gun. Student cooperated with school representatives, answering their questions, turning over to them the pellet gun and plastic pellets and writing a statement in his own words to explain what occurred.

The principal and assistant principal met with Student and his parents about the pellet gun incident. Again, Student was cooperative, admitting that he fired the pellet gun toward another student. As a result of the incident, Student was suspended from school for ten days, and the school superintendent recommended that Student be expelled for one year.

At the January 8, 2007 expulsion hearing, Student testified that he aimed and shot the pellet gun at his girl friend "maybe as kind of a joke" or "maybe to scare her." Student agreed with the Director of Safety and Security, the School Police Officer and the superintendent, who all testified that, if a pellet from the soft air pellet gun struck someone in the eye, the pellet could cause serious bodily injury. Student and his father testified that Student had learned his lesson and that they would like Student to remain in school.

Numerous witnesses testified on behalf of Student, including: the basketball coach; the football coach; the assistant football coach; the President of the Football Parents Club; the owner of Bangor Hardware, where Student worked part-time; and a teammate from the basketball team. These witnesses described Student as likeable, with a great personality, and testified that they did not consider Student a danger to the school community.

Student's girl friend testified that: (1) there had been no incidents between her and Student prior to the pellet shooting; (2) she did not believe that Student meant to hurt her; and (3) although the pellet stung her, the welt went away quickly. The girl friend's father testified that the pellet shooting "wasn't a big deal" and that he did not consider his daughter to be in danger around Student.

Student's disciplinary record was entered into evidence. About a month prior to the pellet shooting, Student was suspended out of school for making inappropriate sexual comments to a female student, i.e., sexual harassment. In addition, since December of 2003, Student received

ten after-school detentions for showing disrespect for teachers, plagiarism, horseplay, disrupting class, failure to follow directions and reckless driving.

At the hearing, the superintendent agreed to modify his recommendation to expel Student for one year by recommending that Student be expelled until the end of the third marking period, with readmission conditioned upon the following: (1) readmission at the discretion of the superintendent; (2) completion of fifty hours of community service; (3) participation in weekly individual psychological counseling and submission of a counselor's report indicating that Student will be able to conform his behavior to acceptable school standards; (4) maintenance of a C or better average during expulsion; (5) upon readmission, remain free of any disciplinary referrals, no participation in a school sports team, no participation in the prom or senior banquet and participation in graduation ceremonies only if Student satisfies all graduation requirements and all requirements of the expulsion.

In its January 22, 2007 adjudication, the School Board concluded that Student violated Section 1317.2 of the Public School Code of 1949 (Public School Code)[1] by possessing a pellet gun on school property. In reaching this conclusion, the School Board determined that a pellet gun is a "weapon" under Section 1317.2(g) of the Public School Code, 24 P.S. § 1317.2(g), because it is capable of inflicting serious bodily injury to an eye. The School Board also concluded that Student, in shooting another student with a pellet gun, violated the school policy prohibiting terroristic acts or threats and engaged in disorderly conduct. As a result, the School Board expelled Student until the end of the third marking period, with readmission subject to the conditions set forth by the superintendent in his recommendation.

Student filed an appeal with the trial court. Student alleged that: (1) a toy "air soft" pellet gun that discharges plastic pellets is not a "weapon," and the shooting of a toy gun at a student does not constitute a terroristic act or threat; (2) the School Board violated the Sunshine Act, 65 Pa. C.S. §§ 701–716, by taking official action in private, i.e., by asking the solicitor to request that the superintendent modify his recommendation to allow the School Board to expel Student for less than one year; and (3) the School Board's communication with the superintendent through the solicitor, *ex parte,* violated Student's due process rights.

The trial court held a hearing on the Sunshine Act issue. One of the nine School Board members testified as follows. When the School Board members began to deliberate, it became evident that there was not a majority of five in favor of a one-year expulsion. Two members were in favor of the penalty, but two members would not support any expulsion at all because they concluded that the pellet gun was not a weapon. The remaining five members discussed reducing the period of expulsion and imposing conditions for readmission, but they became aware that, under Section 1317.2 of the Public School Code, 24 P.S. § 13–1317.2, the School Board was required to expel Student for one year unless the superintendent recommended modifying that requirement. The solicitor suggested that he leave the room and negotiate with the superintendent and the School District's attorney. After doing so, the solicitor reported that the superintendent had agreed to the reduced expulsion with conditions for readmission.

---

1. Act of March 10, 1949, P.L. 30, *as amended, added by* Section 4 of the Act of June 30, 1995, P.L. 220, *as amended,* 24 P.S. § 13–1317.2.

The solicitor testified as follows. He informed the superintendent and the School District's attorney that a majority of the School Board was in favor of expelling Student for less than one year with conditions for readmission. He outlined only two or three of the conditions because it did not appear to him that the five members of the School Board had concluded their discussion of the conditions. The superintendent agreed to consider changing his recommendation but would not commit to it at that time. When the solicitor returned to the School Board, some members were still discussing the conditions for readmission. After the five members reached a consensus, the solicitor jotted down the conditions for readmission on an envelope. The School Board then went back into public session and asked the superintendent whether he would change his recommendation so that Student would be expelled until the end of the third marking period with conditions for readmission. The superintendent consulted with the School District's attorney and announced that he would change his recommendation.

2.   Student argued that, if a "weapon" is any object that is capable of inflicting serious bodily injury, then scissors, pencils, neckties, shoelaces, belts and jewelry are "weapons"; however, students who possess such items are not expelled.

3.   The trial court also concluded that the School Board did not intend to make Student's readmission subject to the discretion of the superintendent; rather, the School Board intended that Student be readmitted once he fulfilled the conditions for readmission.

4.   We note that the parties informed this Court during oral arguments that Student has graduated from high school. This fact renders this matter moot. *See In re D.A.*, 801 A.2d 614, 616 (Pa.Super.2002) (An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in

After considering the issues raised, the trial court: (1) rejected Student's argument that a toy soft air pellet gun that discharges plastic pellets is not a "weapon";[2] (2) concluded that the School Board did not take official action under the Sunshine Act when it held private negotiations with the superintendent, and, even if it did, the School Board cured the violation in public session; and (3) the solicitor did not violate Student's due process rights.[3] This appeal followed.[4]

Herein, Student raises the following issues:

1.   Whether the School Board and trial court erred in concluding that Student's toy soft air gun is a "weapon" under Section 1317.2 of the Public School Code;

2.   Whether the trial court erred in concluding that the School Board did not violate the Sunshine Act and Student's due process rights;

3.   Whether the trial court erred in concluding that the School Board cured any violation of the Sunshine Act and Student's due process rights; and

the applicable law.). Courts do not decide moot questions. *In re Gross*, 476 Pa. 203, 382 A.2d 116 (1978). Exceptions to this principle are made in rare instances where the case involves issues important to the public interest, the conduct complained of is capable of repetition yet likely to evade review or a party will suffer some detriment without the court's decision. *Musheno v. Department of Public Welfare*, 829 A.2d 1228 (Pa.Cmwlth.2003). We conclude that the present matter falls within the exception in that the issue of whether a pellet gun is a "weapon" pursuant to Section 1317.2 of the Public School Code is capable of repetition yet likely to evade review due to the fact that the student involved may very well serve the term of his or her expulsion prior to the exhaustion of the appeal process.

4. Whether the trial court erred by failing to make a finding of fact as to whether Student proved a violation of the Sunshine Act and Student's due process rights.

In support of the first issue raised, Student argues that the School Board's characterization of the pellet gun as a weapon that is capable of causing serious bodily injury fails to consider the surrounding facts of this matter. Student points out that there is no definition of "serious bodily injury" in the Public School Code; therefore, the trial court should have adopted the definition of the same in the Pennsylvania Crimes Code in order to avoid absurd results. *See* Section 2301 of the Crimes Code, 18 Pa.C.S. § 2301. Section 2301 defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

Student contends that the School Board's interpretation of the definition of a "weapon" found in Section 1317.2 of the Public School Code includes any object that is capable of inflicting serious bodily injury without regard to the manner in which it is used. Student argues that this interpretation results in dozens of ordinary items, which clearly are not weapons in the ordinary sense but are in the possession of students on many high school campuses in the country, being deemed "weapons" that could cause serious bodily injury if used with the intention to do so. Therefore, Student contends, a logical and rational definition of "weapon" within the context of the Public School Code must include a

consideration as to whether an instrumentality is intended, calculated, or likely to produce serious bodily injury in the manner in which it is used. Student argues that such a definition can be found in the language contained within the definition of a "deadly weapon" in the Crimes Code. *See* Section 2301 of the Crimes Code, 18 Pa.C.S. § 2301. Pursuant to Section 2301 of the Crimes Code, a "deadly weapon" includes any device which, "in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." *Id.*

Student argues further that there is no evidence in the present case that the pellet gun was used or intended to be used in a manner capable of causing serious bodily injury or death. Student argues that without this evidence, an item cannot logically be considered a weapon within the context of Section 1317.2 of the Public School Code.

Under Section 1317.2(a) of the Public School Code, a school district shall expel for not less than one year, any student who is determined to have brought onto or is in possession of a "weapon" on school property.[5] 24 P.S. § 13–1317.2(a). Section 1317.2(g) provides:

As used in this section, the term "weapon" shall include, but not be limited to, any knife, cutting instrument, cutting tool, nunchaku, firearm, shotgun, rifle and **any other tool, instrument or implement capable of inflicting serious bodily injury.**

24 P.S. § 13–1317.2(g) (emphasis added).

▮ In determining whether a pellet gun falls within the foregoing definition,

---

**5.** Section 1317.2 does not apply: (1) where a weapon is being used as part of a program approved by a school by an individual who is participating in the program; or (2) where a weapon is unloaded and is possessed by an individual while traversing school property

for the purpose of obtaining access to public or private lands used for lawful hunting, if the entry on school premises is authorized by school authorities. Section 1317.2(d) of the Public School Code, 24 P.S. § 13–1317.2(d).

we find the Superior Court's decision in *In the Interest of M.H.M.*, 864 A.2d 1251 (Pa.Super.2004),[6] instructive wherein the Superior Court addressed a nearly identical definition of "weapon" that appears in section 912 of the Crimes Code, 18 Pa.C.S. § 912. Section 912 of the Crimes Code makes it a crime to possess a "weapon" on school grounds. Like Section 1317.2 of the School Code, the definition of "weapon" in Section 912 includes any "tool, instrument or implement capable of inflicting serious bodily injury." 18 Pa.C.S. § 912. In *M.H.M.*, our Superior Court held that a student with a carbon dioxide-powered paintball gun possessed a "weapon" on school grounds because a paintball gun is capable of inflicting serious injury to the eye.

Here, there is no dispute that pellet guns are capable of inflicting serious injury to an eye.[7] Thus, under the Superior Court's decision in *M.H.M.*, we may similarly conclude that a pellet gun is a "weapon" within the meaning of Section 1317.2 of the School Code.

Student's arguments that in order to avoid absurd results we must consider the intent with which an item capable of inflicting serious bodily injury is used are not convincing. We agree with the trial court that it would be absurd, impossible to administer, and unreasonable to interpret the School Code in the manner suggested by Student.[8] As stated by the trial court:

> In reviewing the definition of "weapon" in the School Code, it is clear that the [General Assembly] listed several items that are traditionally considered to be weapons and that can inflict serious bodily harm when used in the manner intended (knife, cutting instrument, cutting tool, nanchaku, firearm, shotgun, and rifle). The [General Assembly] then included the term "capable" in the catch-all language "any other tool, instrument or implement *capable* of inflicting serious bodily injury," suggesting the [General Assembly's] intent to include not only "other" items *designed* to inflict serious bodily injury, but also "other" items, that *even when used as intended,* can inflict serious bodily injury.

Trial Court Opinion at 8. While Student may have not intended to harm his girlfriend when he fired the pellet gun in her direction, as pointed out by the trial court, a pellet gun is intended to shoot plastic pellets at a relatively high velocity and is capable of causing serious bodily injury. Accordingly, we conclude that the School Board did not err in finding that the pellet gun was a weapon under the Public School Code.

In support of the second and third issues raised, Student argues that the School Board violated the Sunshine Act and his due process rights by taking official action in private. Student argues further that such violations were not later cured by the School Board's actions.

Pursuant to Section 704 of the Sunshine Act, "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public **unless** closed under section ... 708 (relating to executive sessions)...." Section 704 of the Sunshine Act, 65 Pa.C.S. § 704 (emphasis added).

---

**6.** *Petition for allowance of appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005).

**7.** Student does not argue that pellets guns are not tools, instruments or implements.

**8.** In ascertaining the intention of the General Assembly in the enactment of a statute, we presume that the General Assembly did not intend a result that is absurd. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).

"Official action" includes votes taken by an agency on a proposal. Section 703 of the Sunshine Act, 65 Pa.C.S. § 703. An agency may hold an executive session, i.e., a closed meeting, for quasi-judicial deliberations. Section 708 of the Sunshine Act, 65 Pa.C.S. § 708.

Here, five members of the School Board proposed that Student be expelled for less than one year and that the superintendent be asked to change his recommendation to expel for one year. However, the proposal was made and considered during quasi-judicial deliberations. Thus, we conclude that the School Board did not violate the Sunshine Act in voting on the proposal.

■ In addition, this Court has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act. *Association of Community Organizations for Reform Now (ACORN) v. Southeastern Pennsylvania Transportation Authority (SEPTA)*, 789 A.2d 811 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 569 Pa. 695, 803 A.2d 736 (2002). Thus, if the School Board violated the Sunshine Act by deciding in private to ask the superintendent to modify his expulsion recommendation, the School Board cured the violation at the January 8, 2007 hearing and again at its later, open meeting on January 22, 2007.

■ With respect to Student's contention that his due process rights were violated when the School Board privately requested that the superintendent change his expulsion recommendation, it is well settled that due process requires that cross-examination be afforded in administrative agency proceedings. *Murphy v. Department of Education*, 74 Pa.Cmwlth. 499, 460 A.2d 398 (1983). Those due process rights are violated where an agency considers additional evidence provided in an *ex parte* communication. *Id.*

In the present case, we conclude that Student's due process rights were not violated. As pointed out by the trial court, there was no evidence presented at the hearing before the School Board or to the trial court that any evidence concerning the grounds or the disposition was submitted *ex parte* to the School Board. The exchange between the School Board and the superintendent consisted solely of a request that the superintendent change his recommendation on the length and conditions of the expulsion. Thereafter, the issue was addressed at the January 8, 2007 hearing wherein the School Board's special counsel publicly asked the superintendent if he would be willing to change his recommendation. The superintendent requested time to confer with the School District's solicitor as to the legality of such a change, and after such a conference, the School District's solicitor announced that the superintendent was willing to change his recommendation. Again, as pointed out by the trial court, when the School Board asked if there were any remaining matters before the record was closed, Student's counsel did not raise any objection as to what had occurred at the hearing or what had been set forth by the School Board's special counsel during the hearing. By allowing the record to be closed after being advised that the superintendent was changing his recommendation, Student implicitly consented to the changed recommendation and procedure.

Moreover, no final decision was made on the superintendent's recommendation at the January 8, 2007 hearing. The final adjudication was prepared for the School Board's consideration and voted on and approved at the January 22, 2007 public meeting. Student did not raise any due process issues at the January 22, 2007 public meeting. Therefore, we conclude that the School Board did not violate Student's due process rights.

Finally, Student argues that the trial court erred by failing to make a finding of fact as to whether Student proved a violation of the Sunshine Act and Student's due process rights. We disagree.

The trial court found that the record contains substantial evidence to show that the School Board did not violate the Sunshine Act or the due process rights of Student. Student argues that the trial court needed to make a finding of fact as to whether Student met his burden of proving such violations. However, it is clear from the trial court's finding that the trial court did not believe that Student met his burden of proof.

The trial court's order is affirmed.

### ORDER

AND NOW, this 15th day of November, 2007, the order of the Court of Common Pleas of Northampton County at C–48–VC–2007–523, dated February 16, 2007, is affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Bangor Area School District and the Board of School Directors of the Bangor Area School District (School District) properly expelled Kyle Russel Picone (Student), a minor by and through his natural parents and guardians, Anthony Picone and Kimberly Picone, his wife, under section 1317.2(a) of the Public School Code of 1949 [1] (Public School Code) for possessing a "weapon" on school property.[2]

Section 1317.2(a) of the Public School Code authorizes a school district to expel for not less than one year any student who is determined to be in possession of a "weapon" on school property. 24 P.S. § 13–1317.2(a).

> As used in this section, the term "weapon" shall include, but not be limited to, any knife, cutting instrument, cutting tool, nunchaku, firearm, shotgun, rifle and any other tool, instrument or implement **capable of inflicting serious bodily injury.**

24 P.S. § 13–1317.2(g) (emphasis added). In this case, the School District expelled Student for possession of a toy soft air pellet gun after Student shot the pellet gun at his girlfriend and a plastic pellet struck her on the thigh. The School District determined that the toy [3] pellet gun is

---

**1.** Act of March 10, 1949, P.L. 30, *as amended,* added by section 4 of the Act of June 30, 1995, P.L. 220, *as amended,* 24 P.S. § 13–1317.2(a).

**2.** The basis for the majority's holding is unclear. On the one hand, the majority appears to follow *In the Interest of M.H.M.,* 864 A.2d 1251 (Pa.Super.2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), in which our superior court held that a carbon dioxide-powered paintball gun is a "weapon" under section 912(a) of the Crimes Code, 18 Pa.C.S. § 912(a), because it is **capable of inflicting serious bodily injury** to the eye. (*See* Majority op. at 562.) On the other hand, the majority appears to follow the reasoning of the Court of Common Pleas of Northampton County (trial court), which held that Student's toy soft air pellet gun is a "weapon" under sec-

tion 1317.2(g) of the Public School Code, 24 P.S. § 13–1317.2(g), because it is capable of inflicting serious bodily injury to the eye **when used as intended.** (*See* Majority op. at 562.)

**3.** I note that a "toy" is an "article for the playtime use of a child" or "something designed for amusement or diversion rather than practical use." Webster's Third New International Dictionary 2419 (1993). However, as ordinarily understood, a "weapon" is "an instrument of offensive or defensive combat: something to fight with." Webster's Third New International Dictionary 2589 (1993). The legal definition of "weapon" here does not suggest otherwise. To say that a "toy" is a "weapon" is an oxymoron; the concepts are mutually exclusive.

a "weapon" because it is capable of inflicting serious bodily injury to the eye.

However, virtually anything is capable of inflicting serious bodily injury if not used for its intended purpose. For instance, our supreme court once held that a bedroom slipper is a deadly weapon when used to beat someone over the head. *See Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313 (1992). Moreover, our superior court has held that a raw egg thrown from the roof of a building at the windshield of a moving vehicle is a dangerous and deadly missile because it could leave the driver with little or no visibility. *Commonwealth v. Roman*, 714 A.2d 440 (Pa.Super.), *appeal denied*, 556 Pa. 707, 729 A.2d 1128 (1998). A witness for the School District in this case testified that a water pistol would be a "weapon" because it **might** contain a liquid other than water that could inflict serious bodily injury.[4] (R.R. at 40a.)

If the test for determining whether a student possesses a "weapon" on school property is simply whether the item is capable of inflicting serious bodily injury, then school districts could expel students for possessing innumerable common, everyday objects. I believe that to derive such a test from the statutory definition would lead to absurd results.[5]

In trying to avoid absurd results, I take a common sense approach. When a student uses an object that is not inherently a weapon to **intentionally** inflict serious bodily injury to another, the object is a weapon. When a student using an object **accidentally or carelessly** inflicts serious bodily injury to another, the fact that the other person suffered an unintentional, accidental injury does not make the object a weapon. Here, Student did not intend to inflict serious bodily injury on his girlfriend and, in fact, did not do so. If Student had inflicted serious bodily injury on his girlfriend, it would have been entirely unintentional. Although Student was careless in using his toy pellet gun,[6] I submit that Student did **not** use it as a "weapon."

Student testified that he learned his lesson. (Findings of Fact, No. 21.) However, the lesson to be learned from this case should be learned by all students, not just Student. I understand that it is the legislature's duty to define terms in a particular context, but the legislature, in its wisdom, could have done a better job in enacting a school safety law to prevent harm to students. Rather than expelling a student arbitrarily for possessing everything from the baseball bat a student might bring for the pick-up game after school to the knitting needles a student might bring to make a scarf during lunch or study hall, the legislature could have required that school districts hold assemblies to educate children about the prevention of serious bodily injury to others when using potentially dangerous objects.

Moreover, where the law punishes a student by depriving that student of a normal

---

4. I note that, if the water pistol contained only water, or contained nothing at all, it would not be capable of inflicting serious bodily injury. Nevertheless, the witness suggested that the student could be expelled for possessing a water pistol, whatever the contents.

5. The trial court agrees, stating that "to read [the Public School Code definition of "weapon"] in a way that would make the possession of scissors, pencils, neckties, shoelaces, belts, and jewelry illegal on school grounds [leads to] a result that is absurd, impossible of execution or unreasonable." (Trial ct. op. at 7–8.)

6. Student's undisputed testimony was that he did not even intend to hit his girlfriend when he shot the pellet gun in her direction. (Trial ct. op. at 10; R.R. at 119a.)

educational experience, and imposing severe sanctions, without any proof that the student intended any harm, as the evidence here clearly shows, students will learn well that ambiguities in the law create arbitrary and unreasonable results. For that reason, the School District's decision, and the majority's affirmance, is regrettable.

Accordingly, unlike the majority, I would reverse.