IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Froetschel and :
Marla N. Presley, :
                Appellants : No. 66 C.D. 2022
                 :
       v. : Argued: February 7, 2023
                 :
City of Pittsburgh Historic Review :
Commission and City of Pittsburgh :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE CHRISTINE FIZANNO CANNON, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge


**OPINION NOT REPORTED**

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED: April 14, 2023


          Appellants Joseph R. Froetschel (Froetschel) and Marla N. Presley (Presley) (together, Homeowners) appeal *pro se* from the December 20, 2021 order of the Court of Common Pleas of Allegheny County, Pennsylvania (trial court). The trial court affirmed, in part, and reversed, in part, the May 5, 2021 decision of the City of Pittsburgh Historic Review Commission (Commission), which denied Homeowners' Application for a Certification of Appropriateness (Certificate) for certain proposed improvements and modifications to their home located in a historic district of the City of Pittsburgh (City).[1] Homeowners argue on appeal to this Court that the trial court applied an incorrect standard of review and that the Commission

---

[1] Although separate parties, both the City and the Commission are represented by the same counsel and have aligned interests. For convenience, we will refer to both together as the "Commission."

proceedings deprived them of certain procedural due process rights. After careful review, we vacate the trial court's order and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Homeowners purchased the residence at 911 Beech Avenue, Pittsburgh, Pennsylvania (Property) in October 2019. The Property is located in the City's Allegheny West Historic District. At the time of purchase, the Property was divided into nine rental units and was in a dilapidated condition. Amidst making other improvements to the Property, on February 12, 2021, Homeowners submitted an Application for a Certificate of Appropriateness (Application) to the Commission,[2] in which they requested approval of the following items: adding shingles to the front porch roof, removing the fire escape, cleaning the front sandstone façade, installing lighting on the front façade and porch, and repainting wood and metal trim. (Reproduced Record (R.R.) 11a, 84a.)[3]

Homeowners presented the Application at a public hearing on March 3, 2021.[4] Present at the meeting were Commission Chairperson Lucia M. Aguirre (Aguirre), Commission Secretary David Green (Green), and Commissioners

---

[2] The Commission and its membership were established by section 1101.07 of Title XI of the Pittsburgh Zoning Code (Zoning Code). City of Pittsburgh, Pa. Zoning Code (1997); *See also* Title XI § 1101.07 (1997), available at
https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances (last visited April 13, 2023).

[3] Because of time constraints, Homeowners performed some of the proposed work prior to receiving approval from the Commission. (Notes of Testimony (N.T.), 3/3/21, at 12-14; R.R. 142a-44a.)

[4] In reviewing applications for Certificates of Appropriateness in the Allegheny West Historic District, the Commission applies the Design Guidelines for Allegheny West Historic District developed by the Commission pursuant to section 1101.02(g) of Title XI of the Zoning Code. (R.R. 106a-26a.) *See also* Title XI § 1101.02(g) (1997), available at
https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances (last visited April 13, 2023).

Andrew Dash (Dash), Matthew Falcone (Falcone), James Hill (Hill), Karen Loysen (Loysen), and Sarah Quinn (Quinn) (together, Commissioners). (R.R. 131a.) At the hearing, Froetschel explained Homeowners' requests and introduced several photographs of the proposed work. (N.T., 3/3/21, at 2-4; R.R. 132a-34a.) The Commission then opened the hearing to public comment, beginning with the testimony of Carole Malakoff (Malakoff), a representative of the Allegheny West Local Review Committee (LRC). (N.T., 3/3/21, at 5; R.R. 135a.) Prior to hearing Malakoff's testimony, Aguirre noted that Malakoff had "e-mailed comments ahead of time to us." Malakoff then made her presentation on behalf of the LRC, objecting to many of Homeowners' proposed modifications. She asked if the Commission received the "printout" of the LRC's written response, which Aguirre confirmed. (*Id.* at 5-8; R.R. 135a-38a.) Froetschel did not request the opportunity to examine Malakoff, and the Commission received no other live testimony. *Id.*

The Commissioners then questioned Froetschel about the proposed work. During the questioning, Froetschel objected to the Commission's consideration of the LRC's e-mails on the ground that they had not been provided to Homeowners. (*Id.* at 22; R.R. 152a.) In response to Froetschel's objection, Quinn noted that Malakoff "pretty much read from the e-mail that she forwarded to us." (*Id.*) Froetschel continued his objection:

> She read from the [e-mail], and it can be included, but including anything more than her statement today, which is included by the court reporter, is improper. And I ask that whatever e-mails are provided again to Commissioners, and none of it was provided to me, none of that be included as part of the record.

(*Id.* at 22-23; R.R. 152a-153a.) Commissioner Dash noted and effectively overruled Froetschel's objection, explaining:

3

> And, sir, that correspondence came to us this morning and we take e-mail correspondence for any hearing to be introduced as correspondence to the Commissioners. So where the applicant can get a copy of the correspondence, it is a part of what the Commissioners can take into account in making a decision and it is something that is allowable for any hearing that we have.

(*Id.* at 23; R.R. 153a.)[5] After further discussion, the Commission voted to approve fire escape removal, cleaning of the stone façade, and repainting of wood and metal trim. It tabled to a later hearing consideration of the front porch roof and lighting installation so that it could receive more information and review additional photographs. (*Id.* at 26-27; R.R. 156a-57a.) *See also* Meeting Minutes, 3/3/21; R.R. 30a-31a.[6]

The Commission resumed consideration of Homeowners' Application at its May 5, 2021 meeting. Aguirre again presided, with Commissioners Dash, Green, Hill, Loysen, Falcone, and Richard Snipe (Snipe) in attendance. (N.T., 5/5/21, at 1-2; R.R. 164a-65a.) After Froetschel again presented Homeowners' requests, the Commission received public comment. (N.T., 5/5/21, at 8; R.R. 171a.) Malakoff again appeared for the LRC and explained its objections to the work. (*Id.* at 8-9; R.R. 171a-72a). After Malakoff's presentation, Aguirre again acknowledged that the Commission had received e-mail comments from the LRC, which reiterated the substance of Malakoff's live testimony. (*Id.* at 9; R.R. 172a.) Another objector,

---

[5] The published agendas for Commission hearings advise the public that hearings are hosted on Zoom and can be streamed on YouTube. Members of the public may testify live via Zoom or by telephone and may submit written comments in advance by e-mail (to historicreview@pittsburghpa.gov) or letter (to 200 Ross St., 4th Floor, Pittsburgh, PA 15219). (R.R. 26a, 54a.) Although Commissioner Dash noted that applicants may obtain copies of public correspondence, there is no evidence in the record indicating whether or how this occurs.

[6] The Commission issued a Certificate for the approved work, which expressly did not include "alterations to the porch roof or installation of any lighting." (R.R. 100a.)

John DeSantos, also appeared and noted his objections to the proposed work. (*Id.* at 10-13, R.R. 173a-76a.) Homeowners did not request to examine either Malakoff or DeSantos.

After discussion and comment, the Commissioners voted to deny all three remaining requests and asked that Homeowners provide alternative light fixture proposals for the front porch. (*Id.* at 18-20; R.R. 181a-83a.) After the vote, Froetschel began to "clarify a few issues," but Aguirre interrupted and precluded him from continuing. The meeting then concluded. (*Id.* at 21-22; R.R. 184a-85a.) *See also* Meeting Minutes, 5/5/21; R.R. 63a-64a.

Homeowners appealed to the trial court on June 3, 2021. (R.R. 274a.) They requested *de novo* review because the record from the Commission hearings was not full and complete to the extent that the written e-mail communications from the LRC were not included in the record or provided to them. They further argued that the proceedings before the Commission violated their right to due process because the Commission considered *ex parte* communications from the LRC and did not permit Homeowners to conduct cross-examination or present rebuttal evidence. In the alternative, Homeowners argued that even if the trial court did not conduct *de novo* review, the Commission's decision was not supported by substantial evidence. Homeowners requested that the trial court reverse the Commission's decision on the three matters decided at the May 5, 2021 hearing.

The trial court declined *de novo* review and affirmed, in part, and reversed, in part. (Trial Court Order, R.R. 265a; Trial Court Opinion (Trial Court Op.) at 2, 6; R.R. 267a, 271a.) The trial court affirmed the Commission's decision regarding the front porch roof and front façade lighting, finding that the decision in that regard was supported by substantial evidence and the applicable Allegheny West Historic District guidelines. (Trial Court Op. at 4-5; R.R. 269a-70a.) The trial court reversed the Commission's decision regarding the front porch lighting,

5

concluding that the decision failed to reference any standards or guidelines and instead was based on the subjective opinions of the Commissioners. (*Id.* at 4, 6; R.R. 269a, 271a.) Regarding Homeowners' due process and record challenges, the trial court noted that the City's solicitor at oral argument

> presented evidence that there was no indication that the letter sent to the [Commission] was reviewed by the [Commissioners] themselves, but rather by Commission staff. He explained that[, ]generally, letters received by the public are reviewed by staff and are not considered *ex parte* communications.

(*Id.* at 3; R.R. 268a.) The trial court did not conduct any further analysis or make any additional conclusions regarding Homeowners' due process claims.

Homeowners now appeal to this Court.

## II. QUESTIONS PRESENTED

Homeowners present the following two questions for our review:

1. Did the [trial court] err by failing to apply a *de novo* standard of review to the [Commission's] decision?

2. Did the [Commission] deny [Homeowners] their constitutional right to due process by failing to provide a complete record, cross-examination, and rebuttal evidence?

(Homeowners' Br. at 4.)

## III. STANDARD OF REVIEW

Although our standard of review of Commission decisions ordinarily is deferential, here Homeowners are not seeking review of the substance of the Commission's determination or the evidence supporting its findings. Rather, the issues presented involve the procedural and constitutional questions of whether the trial court applied the correct standard of review and whether the Commission violated Homeowners' right to due process. Because those are questions of law, our

6

standard of review is *de novo* and our scope of review is plenary. *Braun v. Wal-Mart Stores, Inc.*, 106 A.3d 656, 663 n.8 (Pa. 2014); *Medina v. Harrisburg School District*, 273 A.3d 33, 39 n.10 (Pa. Cmwlth. 2022).

## IV.    DISCUSSION

### A.    <u>Trial Court's Standard of Review</u>

A trial court's standard of review in deciding appeals from local agency decisions depends on the state of the record created before the agency:

> In the event the proceedings before the local agency fail to establish a full and complete record, the court of common pleas may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court. Section 754(a) of the Local Agency Law, 2 Pa.C.S. § 754(a).[7]

> Where a full and complete record is made before the local agency, however, a reviewing court shall hear the appeal on the record supplied, and shall affirm the local agency's adjudication unless it violates constitutional rights, the local agency committed an error of law, the decision violates the provisions of the [Local Agency] Law, or necessary findings of fact are not supported by substantial evidence. Section 754(b) of the [Local Agency] Law, 2 Pa.C.S. § 754(b).[8]

---

[7] Section 754(a) of the Local Agency Law provides as follows:

> **(a) Incomplete record.--**In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

2 Pa.C.S. § 754(a).

[8] Section 754(b) of the Local Agency Law provides, in pertinent part, as follows:
**(Footnote continued on next page…)**

*In re Nevling*, 907 A.2d 672, 674 (Pa. 2006) (some internal citations omitted). *See also In re Thompson*, 896 A.2d 659 (Pa. Cmwlth. 2005). "A 'full and complete' record is defined as a complete and accurate record of the testimony taken so that the appellant is given a [basis] upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *In re Thompson*, 896 A.2d at 668 (citation and some internal quotations omitted). Further,

> [s]ituations in which a record has been deemed incomplete include such instances where the record fails to contain a transcript of the proceedings before the local agency, or where a party refuses to provide relevant and necessary documentation to the local agency[.] . . . However, the record before the local agency is not considered incomplete based solely on a party's failure to present evidence available at the hearing. . . . Indeed, in [*Retirement Board of Allegheny County v. Colville*, 852 A.2d 445, 451 (Pa. Cmwlth. 2004)], we stated that "[t]he trial court has no authority under section 754(b) of the Local Agency Law to remand a matter to the local agency to give the appellant another opportunity to prove what he or she should have proved in the first place."

---

> **(b) Complete record.--**In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal . . . on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of [sections 551-555 of the Local Agency Law, 2 Pa.C.S. §§ 551-555] have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. . . .

2 Pa.C.S. § 754(b).

8

*Kuziak v. Borough of Danville*, 125 A.3d 470, 475-76 (Pa. Cmwlth. 2015) (most internal citations and quotations omitted). The adequacy of a local agency's record is a matter typically committed to the discretion of the trial court. *Kuziak*, 125 A.3d at 475 n.3.

The trial court here took no additional evidence and at least implicitly concluded that a full and complete record was made before the Commission. (Trial Court Op. at 2; R.R. 267a.) It therefore applied the more deferential standard of review set forth in section 754(b) of the Local Agency Law. Homeowners argue that this was error because the e-mail correspondence received from the LRC was not provided to Homeowners or included in the record before the Commission or in the trial court. Accordingly, Homeowners argue that the trial court should have either heard their appeal *de novo* or remanded to the Commission. We agree.

It is undisputed that the Commission received written correspondence from the LRC prior to both the March 3, 2021 and May 5, 2021 hearings. It also is undisputed that this correspondence was not provided to Homeowners and was not made part of the record at any stage of these proceedings. The Commission nevertheless argues that there is no evidence in the record indicating that the Commissioners reviewed or considered any of these e-mail communications prior to the hearings. Rather, the Commission argues that "the record only shows the [Commission] introducing the correspondence into the record following related testimony" and that only Commission "staff" receives communications from the public. (Commission Brief (Br.). at 13.)

Contrary to both the trial court's conclusion and the Commission's arguments, the record from the Commission hearings indicates that the Commission not only permits, but also invites and regularly receives, written comments and "testimony" from the public in advance of its hearings. At least one Commissioner

9

was able to conclude that Malakoff's live testimony was substantially the same as the content of the e-mails received from the LRC. Further, Commissioner Dash, in overruling Homeowners' objection, advised Homeowners that these types of *ex parte* communications are, and in the Commission's view appropriately may, be considered. Although it is not clear from the record whether this correspondence typically is provided to parties in advance of or at hearings, there is no dispute that the LRC's e-mails were not provided to Homeowners at any point.

Moreover, the notion that such correspondence, in whatever form, is submitted only to Commission "staff" is unrealistic. If Commissioners never reviewed or relied on written correspondence from the public, inviting its submission would be pointless.[9] And, although the Commission indicated that the correspondence from the LRC was substantially the same as Malakoff's testimony, there was no way for Homeowners (or the trial court) to confirm that fact. Thus, this is not a case where Homeowners knew of or had evidence that they failed to present to the Commission. Rather, here it is clear that the Commission did and does receive, review, and rely upon *ex parte* written communication from members of the public at large. Those communications were neither included in the record nor provided to Homeowners. We accordingly are constrained to conclude that the record before the Commission was not "full and complete," and the trial court erred in not applying section 754(a) of the Local Agency Law.[10]

---

[9] The City's solicitor noted at oral argument that correspondence received by the Commission generally is reviewed only by staff and that the Commission did not consider such correspondence to be *ex parte* communication. (Oral Argument Transcript, 11/30/21, at 24-28; R.R. 246a-250a.) This information was presented to the trial court by argument only. It is not substantiated by any evidence in the record.

[10] Even if we were to conclude that the trial court did not err or abuse its discretion in finding the Commission's record to be "full and complete," we nevertheless could review whether **(Footnote continued on next page…)**

10

## B.    Due Process

Homeowners next argue that the Commission violated their constitutional rights to due process by (1) considering the *ex parte* communications from the LRC, (2) not permitting Homeowners to cross-examine the objectors who appeared in person at the March 3, 2021 and May 5, 2021 hearings, and (3) not permitting Homeowners to present rebuttal evidence and argument. The Commission argues in response that the *ex parte* e-mails received by the Commission were duplicative of the objectors' live testimony and are accepted by the Commission as part of its standard practice. The Commission further argues that Homeowners never requested to either cross-examine the objectors or present rebuttal evidence.

Parties involved in administrative proceedings are entitled to due process:

> Due process principles apply to administrative proceedings, and require an opportunity, among other things, to hear the evidence adduced by the opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument. As our Supreme Court explained, there must be notice, an opportunity to present one's cause, a proceeding appropriate to the character of the particular case, and an adjudication of the same nature

the Commission committed errors of law, complied with the procedural requirements of the Local Agency Law, or violated constitutional rights. 2 Pa.C.S. § 754(b); *Meyer v. City of Pittsburgh Historic Review Commission*, 201 A.3d 929, 935 n.6 (Pa. Cmwlth. 2019). We also hasten to add and re-emphasize that "it is a fundamental principle of administrative law that an administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent fraud, bad faith, abuse of discretion, or clearly arbitrary action." *Turchi v. Philadelphia Board of License and Inspection Review*, 20 A.3d 586, 591 (Pa. Cmwlth. 2011) (internal quotations and citation omitted). In this appeal, however, we are not asked to interpret the Allegheny West Historic District guidelines or the Commission's application of those guidelines to Homeowners' proposed work. We are presented only with questions of law.

11

> as is present in other cases. Where these things are present there is due process of law.

*D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 720 (Pa. Cmwlth. 2010) (citation and quotation omitted). Further, "it is well-settled that due process requires that cross-examination be afforded in administrative agency proceedings. Those due process rights are violated where an agency considers additional evidence provided in an *ex parte* communication." *Picone v. Bangor Area School District*, 936 A.2d 556, 563 (Pa. Cmwlth. 2007) (internal citation omitted).[11]

### 1.      *Ex parte* Communications

Regarding the *ex parte* communications, Homeowners objected to the inclusion in the record of any e-mail correspondence other than those portions read into the record at the hearing. (N.T., 3/3/21, at 22-23; R.R. 152a-53a.) They did not request that the e-mails be disclosed. The objection informally was overruled by Commissioner Dash, who explained that the Commission routinely accepts and considers written correspondence from the public. (N.T. 3/3/21, at 23; R.R. 153a.) Although these *ex parte* e-mails were not disclosed to Homeowners, the inclusion in the transcript of the substance of the e-mail communications afforded Homeowners enough notice and opportunity to challenge the objectors' testimony. There also is no evidence in the record indicating that the Commission received any *ex parte*

---

[11] Sections 551-555 of the Local Agency Law apply to "all local agencies." 2 Pa.C.S. § 551. These sections set forth the basic requirements for agency proceedings. Sections 552 and 553 provide that parties before a local agency may be represented by counsel, must be afforded reasonable notice and a right to be heard, and may have the proceedings transcribed. *Id*. §§ 552, 553. Section 554 provides that "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings," that "all relevant evidence of reasonably probative value may be received," and that "[r]easonable examination and cross-examination shall be permitted." *Id*. *See also* 2 Pa.C.S. § 555 ("All adjudications of a local agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.").

communications from any parties that did not also testify at the hearing. Thus, we cannot conclude that the Commission considered the substance of any "additional evidence" that was not available to Homeowners. We accordingly conclude that, although the record before the Commission was not complete, the omission of the challenged e-mail communications from the record did not deprive Homeowners of due process.[12]

## 2. Cross-Examination and Rebuttal

With regard to Homeowners' arguments about cross-examination and rebuttal, we are constrained to agree with the Commission that Homeowners did not request the opportunity to cross-examine the live witnesses at either the March 3, 2021 or May 5, 2021 hearings. (N.T., 3/3/21, at 8; R.R. 138a; N.T., 5/5/21, at 9, 13; R.R. 172a, 176a.) Further, although Homeowners attempted to present additional argument after the Commission members voted at the conclusion of the May 5, 2021 hearing, *see* N.T., 5/5/21, at 20-22; R.R. 183-85a, they did not request the opportunity to present any rebuttal evidence at the March 3, 2021 hearing and did not request rebuttal after public comment ended at the May 5, 2021 hearing. (*Id.* at 13-14; R.R. 176a-77a.) Although section 554 of the Local Agency Law provides for the opportunity to cross-examine witnesses, "statutory guarantees of due process do not prohibit parties from waiving their rights." *Lewis v. School District of Philadelphia*, 690 A.2d 814, 817 (Pa. Cmwlth. 1997) (where neither party nor his lawyer requested the ability to submit briefs to school district board, any due process right to do so under section 506 of the Administrative Agency Law, 2 Pa.C.S. § 506, was waived). Because Homeowners did not timely request the opportunity to cross-

---

[12] We also note that the production of the e-mail communications to Homeowners likely would not have changed the Commission's decision. The Commission considered both the e-mails and the associated live testimony in rendering its decision. Homeowners did not request the ability to cross-examine the public witnesses at either hearing.

13

examine witnesses or present rebuttal evidence, we conclude that they waived their right to do so.[13]

## V. CONCLUSION

In sum, we conclude that the record before the Commission was not full and complete. The trial court therefore erred in not applying section 754(a) of the Local Agency Law. We accordingly vacate the trial court's order and remand to that court for further proceedings. On remand, the Commission shall supplement the record in the trial court with any written correspondence it received from the public in any form. The trial court thereafter shall reconsider Homeowners' appeal *de novo*.

_____
PATRICIA A. McCULLOUGH, Judge

---

[13] Although we conclude that Homeowners' issues on appeal regarding cross-examination and rebuttal are waived, we nevertheless note that sections 551-555 of the Local Agency Law continue to apply to Commission proceedings. Nothing in our decision should therefore be interpreted to sanction the Commission's practices in either permitting or precluding cross-examination and rebuttal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Froetschel and        :
Marla N. Presley,               :
             Appellants      :
                              :
       v.               :   No. 66 C.D. 2022
                              :
City of Pittsburgh Historic Review  :
Commission and City of Pittsburgh  :

## *<u>ORDER</u>*

AND NOW, this 14th day of April, 2023, the Order of the Court of Common Pleas of Allegheny County, Pennsylvania entered December 20, 2021, hereby is VACATED. This matter is remanded to that court for further proceedings as instructed in the foregoing Memorandum Opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge