**[J-43A&B-2013]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.**

| | |
|---|---|
| MICHELLE BRAUN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>        Appellee<br><br>        v.<br><br>WAL-MART STORES, INC., A DELAWARE CORPORATION, AND SAM'S CLUB, AN OPERATING SEGMENT OF WAL-MART STORES, INC.,<br><br>        Appellants | : No. 32 EAP 2012<br>:<br>:<br>: Appeal from the Judgment of Superior<br>: Court, entered on June 10, 2011, at No.<br>: 3373 EDA 2007, affirming in part and<br>: reversing in part the Judgment of the<br>: Court of Common Pleas of Philadelphia<br>: County, Civil Division, entered November<br>: 14, 2007, at No. 3127, March Term 2002<br>:<br>:<br>:<br>:<br>: ARGUED:  May 8, 2013<br>:<br>:<br>:<br>:<br>: |
| DOLORES HUMMEL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>        Appellees<br><br>        v.<br><br>WAL-MART STORES, INC., A DELAWARE CORPORATION, AND SAM'S CLUB, AN OPERATING SEGMENT OF WAL-MART STORES, INC.,<br><br>        Appellants | : No. 33 EAP 2012<br>:<br>: Appeal from the Judgment of Superior<br>: Court, entered on June 10, 2011, at No.<br>: 3376 EDA 2007, affirming in part and<br>: reversing in part the Judgment of the<br>: Court of Common Pleas of Philadelphia<br>: County, Civil Division, entered November<br>: 14, 2007, at No. 3757, August Term, 2004<br>:<br>:<br>:<br>:<br>: ARGUED:  May 8, 2013<br>:<br>:<br>:<br>: |

## OPINION

PER CURIAM                                              DECIDED:  December 15, 2014

This discretionary appeal concerns whether the class action proceedings in this case improperly subjected Appellants to a "trial by formula." The trial court certified the class, a jury rendered a divided verdict, and the Superior Court affirmed in part and reversed in part.  We now affirm.

Appellees brought various class action claims against their former employers, Wal-Mart Stores, Inc., and Sam's Club (hereinafter "Wal-Mart"), based on policies and conduct pertaining to rest breaks and meal breaks.  Appellees asserted that Wal-Mart had promised them paid rest and meal breaks, but then had forced them, in whole or in part, to miss breaks or work through breaks, and also to work "off-the-clock," i.e., to work without pay, after a scheduled shift had concluded.[1]  The trial court certified a class consisting of "all current and former hourly employees of Wal-Mart in the Commonwealth of Pennsylvania from March 19, 1998 to the present December 27, 2005."  See Order, 12/27/05, at 1.  The class ultimately consisted of 187,979 members.

The jury trial of this class action alleging systemic wage and hour violations spanned six weeks, resulting in a voluminous  record.  Appellees called eighteen fact witnesses and three expert witnesses during their case-in-chief.   The parties' examinations of Appellees' expert witnesses took six full days of trial (September 11, 12, 13, 19, 20, and 21).  Additionally, lengthy arguments were conducted during trial but outside the hearing of the jury on Wal-Mart's motions to strike portions of the testimony of Appellees' experts.  Ultimately, the jury rendered a verdict in favor of Wal-Mart on all

---

[1] Appellees alleged claims against Wal-Mart for breach of contract, unjust enrichment, and violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") and Pennsylvania Minimum Wage Act ("PMWA").

claims relating to meal breaks but in favor of Appellees on all claims relating to rest breaks and off-the-clock work. The amount of the judgment ultimately entered on the verdict was $187,648,589.[2] Wal-Mart appealed the judgment, and the Superior Court affirmed in part and reversed in part in a published unanimous *per curiam* opinion, which corrected a patent mathematical error committed by the trial court,[3] reversed the award of attorneys' fees, and remanded to the trial court to recalculate the lodestar it had employed to determine the amount of attorneys' fees. Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011). This Court granted Wal-Mart's request for discretionary review, limited to the following issue framed by Wal-Mart:

> Whether, in a purported class action tried to verdict, it violates Pennsylvania law (including the Pennsylvania Rules of Civil Procedure) to subject Wal-Mart to a "Trial by Formula" that relieves Plaintiffs of their burden to produce class-wide "common" evidence on key elements of their claims.

Braun v. Wal-Mart Stores, 47 A.3d 1174 (Pa. 2012).

---

[2] This amount breaks down as follows:

| | |
|---|---|
| WPCL verdict: | $ 49,568,541 |
| Common Law verdict: | $ 29,178,873 |
| Statutory Interest: | $ 10,163,863 |
| WPCL liquidated damages: | $ 62,253,000 |
| WPCL attorney fees: | $ 33,813,986 |
| WPCL expenses: | $ 2,670,325 |

Additional attorney fees in the amount of $11,880,589 and expenses of $938,222 were ordered to be paid from the fund arising from the common law verdict.

[3] The Superior Court's correction of the error reduced the WPCL verdict amount from $49,568,541 to $49,289,541.

The issue accepted for review requires this Court to address: (1) whether Wal-Mart was subjected to a "trial by formula"; and (2) whether Appellees were thereby improperly relieved of their burden to produce class-wide common evidence on key elements of their claims. Notwithstanding Wal-Mart's inclusion of the phrase "purported class action" in the issue presented for review, the propriety of the certification of the class in the first instance is not before the Court in this appeal. Notably, however, much of Wal-Mart's challenge to the method of trial is premised upon its contention that the class never should have been certified because Appellees did not present sufficient, class-wide "common" evidence of contract formation, breach, or unjust enrichment. Moreover, Wal-Mart asserts that the trial court's class certification, the jury verdict, and the Superior Court affirmance all improperly relied upon "sham statistics and baseless extrapolations of [Appellees'] expert witnesses, Drs. Baggett and Shapiro[,]" regarding "Wal-Mart's time clock and cash register records." Appellants' Brief at 27, 30. In short, Wal-Mart asserts that Appellees' statistical and extrapolation evidence was flawed in that it failed to show "that class members, on a class-wide basis, missed breaks, took shortened breaks or worked off-the-clock." Id. at 18-19.

More specifically, Wal-Mart claims that the time clock and cash register records did not show that employees had been forced to miss breaks or work off-the-clock, and that Appellees' expert analysis reaching the opposite conclusion was based on faulty assumptions that failed to account for the actual practices of Wal-Mart and its employees. Specifically, Wal-Mart claims that the analysis regarding rest breaks failed to account for "voluntary" missed breaks, and that the analysis regarding off-the-clock work failed to account for the alleged fact that it was not uncommon for cashiers to log into and operate cash registers under another employee's name. Thus, Wal-Mart asserts that the class was overbroad, that appellees had not shown proper proof of Wal-

Mart's liability as to each "purported" class member, and that Wal-Mart had been subject to a "trial by formula" that denied Wal-Mart its right to due process in violation of Pennsylvania law.[4] Appellants' Brief at 18-19. Specifically, Wal-Mart claims it was denied the right to defend inherently individual issues of liability. Id. at 22-24.

The Superior Court's slip opinion in this case is 211 pages long, and thoroughly details the evidence presented at trial. We set forth here only those facts necessary for resolution of the single issue raised on appeal, in which Wal-Mart challenges the method by which the trial was conducted.

Wal-Mart employees (characterized as "associates" in Wal-Mart's employee handbooks and other written policies) are required to "punch" time clocks. During orientation for new employees, employee handbooks are distributed that, among other things, inform employees that they are entitled to paid rest breaks and that they will be paid for all hours worked. Additionally, all employees are informed, through a variety of means, about Wal-Mart's rest break policy, known as PD - 07, and its off-the-clock work policy, known as PD - 43. The rest break policy states that a paid, 15-minute break will be given to an employee who works between three and six hours, and that an additional paid, 15-minute break will be given to an employee who works more than six hours. The rest break policy requires that employees take full, uninterrupted breaks, and warns that disciplinary action may result if an employee misses breaks or takes breaks that are either too long or too short. Wal-Mart's off-the-clock work policy provides that it is against company policy for any employee to perform work without being paid, and that employees will be compensated for all work performed.

Prior to February 10, 2001, Wal-Mart employees were required to clock out and clock back in for each rest break, i.e., employees were required to "punch" or "swipe" a

---

[4] There are no federal due process claims asserted.

time clock at the beginning and end of every rest break.  Beginning in 1999, Wal-Mart conducted approximately ten regional internal audits that indicated widespread rest break violations, such as missed breaks, breaks that were too long, or breaks that were too short.  In 2000, Wal-Mart conducted the "Shipley Audit," which was national in scope and included an examination of time clock and cashier log-in records.  The Shipley Audit revealed that in one week, across 127 Wal-Mart stores, including five in Pennsylvania, more than 60,000 rest break violations had occurred.  The Shipley Audit showed that an average of two rest breaks per week per employee were either missed or shortened at every store.  The results were reported to top-level Wal-Mart executives, and on February 10, 2001, Wal-Mart eliminated its policy requiring employees to clock out and clock back in for each rest break.[5]  Additionally, there was evidence that, prior to 2003, it was possible for Wal-Mart cashiers to log in to and operate cash registers even if they were "off-the-clock."  In 2003, Wal-Mart instituted a "lock-out" system whereby no employee who was off-the-clock could log in to a cash register.  However, the system permitted managers to override lock-outs, i.e., to enable an off-the-clock employee to log in to and operate a cash register.

In both seeking certification of the class and litigating their case at trial, Appellees presented the expert opinions of statisticians L. Scott Baggett, Ph.D., and Martin M. Shapiro, Ph.D., who had analyzed Wal-Mart's own business records regarding hours worked, breaks taken, and wages paid to each employee, as well as the results of the Shipley Audit.[6]  At trial, Dr. Baggett testified that he had been provided the hourly

---

[5] Wal-Mart stipulated at trial that as of one month prior to the change in policy, lawsuits alleging violations of Wal-Mart's rest break policy had been filed in seven states: Colorado, Indiana, Louisiana, New Mexico, North Carolina, Ohio, and Texas.

[6] Wal-Mart maintained "Time Clock Archive Reports" that showed total hours worked and total breaks taken by every employee for every shift worked.  Wal-Mart's "Time (…continued)

employee time clock, rest break, and payroll records for all 139 Wal-Mart stores in Pennsylvania for the period from 1998 through early 2006, which amounted to 46 million individual shifts. Dr. Baggett further testified that the data provided had been incomplete, and that statistical extrapolation from the data revealed that, in fact, 52 million individual shifts had occurred during that time period; he testified that his computation of that total had been formulated within a reasonable degree of statistical certainty. Dr. Baggett also explained his methodology for determining how many rest breaks should have been earned over the course of those 52 million individual shifts, and how many rest breaks had been missed. Among other things, this undertaking required calculating numbers for the period from February 2001 to 2006, during which time actual rest break data was no longer available, due to the 2001 change in Wal-Mart's policy that eliminated the requirement for employees to clock out and clock back in at the beginning and end of rest breaks. Dr. Baggett explained that his method for extrapolating the total amount of breaks that had been missed but unrecorded included

_____

(continued…)

Clock Punch Exception Reports" showed missed, inadequate, or overly-long breaks for all employees. These business records were used by Wal-Mart primarily for purposes of calculating payroll, and were analyzed by Appellees' experts. At the class-certification stage, Dr. Baggett testified that he had analyzed some 24,000 individual employee work shifts in twelve Pennsylvania Wal-Mart stores between March 1998 and December 2000, and had concluded that some 40% of hourly workers had not received the number or duration of rest breaks to which they had been entitled. Dr. Baggett stated that his analysis squared with the results of the Shipley Audit. In challenging class certification, Wal-Mart presented the deposition testimony of its own expert to explain that the evidence relied upon by Appellees' experts to show missed breaks was not reliable because an employee's failure to clock out and clock back in from any given break did not necessarily indicate that the employee had failed to take a break. In certifying the class, the trial court ruled that "the discrepancies in testimony [regarding the accuracy/reliability of the business records] will undoubtedly be an issue for jury determination at trial." Trial Court Opinion, 12/27/05, at 11.

baseline calculations of the number of known, recorded missed breaks that had occurred prior to the 2001 change in rest break time clock policy. Based on these extrapolations, coupled with the average rate of pay for hourly Wal-Mart employees, all of which had been calculated within a reasonable degree of statistical certainty, Dr. Baggett testified that the total damages to Wal-Mart hourly employees for missed rest breaks during the relevant time period had been $68,412,107. Dr. Baggett also testified that, although he could not tell from the data why any individual rest break had been missed, he presumed rest breaks had not been missed voluntarily because Wal-Mart's policy prohibited employees from missing or working through scheduled rest breaks.

Dr. Shapiro testified for Appellees regarding off-the-clock work. Dr. Shapiro stated that he had compared the Wal-Mart time clock, payroll, and rest break computer databases, and found numerous recorded instances of employees actively logged in to cash registers or computer-based learning terminals during times when they had simultaneously been clocked out for a break or had been clocked out of a shift altogether. He added that the total amount of such off-the-clock work hours decreased significantly after Wal-Mart instituted its "lock-out" policy in 2003. Dr. Shapiro had been provided with time clock and cash register log-in data for sixteen Pennsylvania Wal-Mart stores for the period from 2001 to 2006. In his testimony, Dr. Shapiro explained how he had extrapolated from that data to determine the average total number of hours of off-the-clock work performed by all hourly employees at all Pennsylvania Wal-Mart stores during the period from 1998 to 2005. He calculated that the unpaid earnings for all Wal-Mart employees working off-the-clock during the relevant period was $2,993,063.32, and testified that his computation had been formulated within a reasonable degree of statistical certainty.

Appellees also presented the expert testimony of organizational psychologist and statistician, Frank Landy, Ph.D., who testified that Wal-Mart had promised all its employees, through a variety of means, that paid breaks were a benefit of employment with Wal-Mart, and that its employees understood and expected that all breaks were to be paid breaks. In discussing the Shipley Audit, Dr. Landy testified that Wal-Mart stores had used daily "time adjustment slips" to correct known rest break violation errors. He explained: "Adjustment means that the associate actually comes in and says, no, no, I actually did get my break; I just forgot to swipe in [and] out for [it]." Dr. Landy testified that only approximately 10% of the total number of rest break violations had been corrected through time adjustment slips, which led him to the conclusion that "the magnitude of this problem even after they correct it for honest mistakes is big." See Braun, 24 A.3d at 932 (quoting Dr. Landy's trial testimony). [7]

---

[7] Dr. Landy also testified, *inter alia*, that Wal-Mart store managers earned significant year-end bonuses for maximizing profits, the key to which was keeping payroll costs down by intentionally understaffing their stores and forcing employees to miss breaks and work off-the-clock. He opined that a store manager could earn a $1300 annual bonus by simply shaving one minute per week per employee from a store's payroll obligation. He further explained that if a manager could shave one hour per week per employee from a store's payroll obligation, the annual bonus would be $82,000. The Superior Court summarized Dr. Landy's testimony as follows:

> Dr. Landy also discussed understaffing in Wal–Mart stores. He opined that Wal–Mart's "preferred scheduling" program was the "root cause" of understaffing in the stores. There is a correlation, Dr. Landy stated, between understaffing and employees' ability to receive breaks: the more understaffed the stores, the greater the pressure on managers not to provide breaks and on employees not to take breaks. He explained how the pressure to reduce payroll costs led to understaffing. Dr. Landy noted that the Wal–Mart store-manager-bonus system had a "negative effect" on compliance with Wal–Mart's policies on breaks and pay. Lastly, Dr. Landy testified that after Wal–Mart conducted its

(…continued)

Appellees also presented the testimony of a number of former and current Wal-Mart employees, who testified that they had regularly been forced to work without taking breaks (or to take shortened breaks) because the stores in which they worked were chronically understaffed. In response, Wal-Mart presented the testimony of a number of current and former employees (all of whom had opted out of the class), who testified that they had never been forced to miss a rest break and had always been paid for the breaks they did take.

During the defense case, Dr. Denise Martin, an expert statistician, testified that she had identified a number of alleged errors in the methods used by Appellees' experts to arrive at their estimated damages computations. Principally, Dr. Martin took issue with Dr. Baggett's premise that an employee's failure to clock out and clock back in from a rest break indicated a missed rest break, as well as his conclusion that no missed breaks were voluntary. In Dr. Martin's opinion, Dr. Baggett had used "bad" data to account for missing data, which is "statistically improper." With respect to Dr. Shapiro's methodology, Dr. Martin criticized his assumption that cashiers did not routinely log in to cash registers under another employee's name. On this basis, Dr. Martin testified that

---

(continued…)

> Shipley Audit, Wal–Mart eliminated the requirement that employees punch the time clock for rest breaks; he opined that Wal–Mart eliminated "smoking gun" evidence of its policy violations to limit its liability.

Braun, 24 A.3d at 887 (citations to record and footnotes omitted).

In contrast, Wal-Mart's retail expert, Wade Fenn, testified that there was no link between Wal-Mart's managers' bonus compensation program and rest breaks, that Wal-Mart's practices were consistent with other big-box retailers, and that Dr. Landy's testimony regarding hypothetical year-end bonuses had been based on an erroneous comparison of employee hours to store profitability.

Dr. Shapiro's comparisons of time clock data to cash register log-in data were improper and resulted in an erroneous calculation of the number of hours of off-the-clock work that had occurred during the relevant time period.

In this appeal, Wal-Mart asserts that it was subjected to "trial by formula," a practice disapproved by the United States Supreme Court in Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541 (2011), and Comcast Corp. v. Behrend, __ U.S. __, 133 S. Ct. 1426 (2013). The Court notes that Wal-Mart's formulation of the issue accepted for review focuses on the procedural conduct of the trial. Nevertheless, Wal-Mart argues that the class was improperly certified because Appellees failed to prove that questions of law and fact were common to the class, and that common questions predominated over individual issues.[8]

_____

[8] Specifically, Wal-Mart asserts that the trial court, in certifying the class, and the Superior Court in affirming class certification, disregarded the "individualized issues [that] included whether class members actually missed breaks or had them cut short; whether, if a class member missed a break, his or her actions were voluntary; whether cashiers whose cash register log-in records did not match their time clock records actually worked off-the-clock; whether Wal-Mart intended to be contractually bound to each class member by the employment handbooks [promising paid breaks]; and whether each class member relied on the employee handbooks in deciding to work at Wal-Mart." Appellants' Brief at 28. The Court notes that an order granting class certification will not be disturbed on appeal unless the court abused its discretion in applying the procedural requirements for class certification. Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 15 (Pa. 2011). In deciding whether class action procedural requirements were misapplied or an incorrect legal standard was used in ruling on class certification, our standard of review is *de novo* and our scope of review is plenary. Id. Wal-Mart's allegation that both courts below disregarded individualized issues does not prove misapplication of procedural requirements because the existence of distinguishing individual facts among class members is not fatal to certification. Id. at 23. Appellees here were not required to prove that the claims of all class members were identical. Class members may assert a single common complaint even if they have not all suffered actual injury, and demonstrating that all class members are subject to the same harm will suffice. Id. (citing Liss & Marion, P.C. v. Recordex Acquisition Corp., 983 A.2d 652, 666 (Pa. 2009)). For this reason, we do not discern an abuse of discretion in the pre-trial certification decision.

In effect, Wal-Mart's arguments in support of its assertion that the class should not have been certified mirror its arguments in support of the assertion that it was subjected to a trial by formula. Nevertheless, the focus in this appeal should be primarily on the proofs offered at trial and whether the proceeding conducted by the trial court amounted to a trial by formula that relieved Appellees of their burden to produce common evidence on key elements of their claims.[9] Our review of this question of law is plenary and *de novo*. Lower Makefield Twp. v. Lands of Dalgewicz, 67 A.3d 772, 775 (Pa. 2013).

In response, Appellees argue that on the merits, class certification was warranted here, and that Wal-Mart was not subjected to a trial by formula, but rather was faced with a recognized and acceptable style of class action known as "replicated proof," in which the same underlying evidence, if relevant and credible, proves each class member's claim as if each class member had proceeded alone. Appellees' Brief at 18 (citing Liss & Marion v. Recordex Acquisition Corp., 983 A.2d 652 (Pa. 2009)). In a reply brief, Wal-Mart largely reiterates the positions in its original brief. Appellants' Reply Brief at 1-25. The Court notes that a number of *amicus curiae* briefs were also filed in this appeal.[10]

---

[9] See Samuel-Bassett, 34 A.3d at 34 ("Once the jury rendered its decision, the trial court's certification of the class was no longer revocable. [Pa.R.C.P. 1710(d)]. The only available avenue for [Defendant] to obtain relief from the judgment based on post-verdict arguments that evidence personal to [individual Plaintiff] was not probative of the class claims was to challenge the sufficiency or weight of the evidence.").

[10] Two groups filed *amicus* briefs in support of Appellees: one group consisted of various labor organizations and the other consisted of various legal aid and legal rights organizations. Four entities filed *amicus* briefs in support of Wal-Mart: the Defense Research Institute, the Product Liability Advisory Council, a group of national and state retail associations, and a group of national, state, and local chambers of commerce.

Due process in legal proceedings requires an opportunity to confront and cross-examine adverse witnesses. Goldberg v. Kelly, 397 U.S. 254, 269-70 (1970). As observed by the United States Court of Appeals for the Third Circuit, the validity of an argument challenging the manner in which a trial has been conducted and alleging that it was so highly prejudicial so as to amount to a denial of due process must be measured against the background of the trial as a whole; the complexity of the litigation; the length of the trial; the quantity of evidence received; and, the difficulty of the task that confronted the factfinder. Citron v. Aro Corp., 377 F.2d 750, 752 (3d Cir. 1967). The class action mechanism is designed to permit a named individual to proceed to trial on behalf of the class, including him- or herself, and to try all of the class members' claims together to judgment. Samuel-Bassett, 34 A.3d at 34 (citing Pa.R.C.P. 1715(c)).

The United States Supreme Court's disapproval of "trial by formula" in Dukes was directed at a plan to try a sample set of class members' claims of sex discrimination and, if discrimination was found and the claims were meritorious, to then multiply the average back-pay award to determine the class-wide recovery without further individualized proceedings. Dukes, __ U.S. at __, 131 S. Ct. at 2561. To the High Court, this "novel" process would have robbed Wal-Mart (in that case) of its right to litigate its defenses to individual claims, because liability for all but the sample set would never be tried. Id. The United States Court of Appeals for the Sixth Circuit has described the "trial by formula" method disapproved in Dukes as follows:

> Dukes proposed a "Trial by Formula" process. Under this system, the district court would appoint a master to determine whether and how much backpay was due to a sample set of class members. The court would then multiply the total number of class members by the percentage of claims the special master determined were valid. Next, it would multiply that number by the average backpay award for sample claimants with a valid claim to determine the

class's recovery. The Court did not make clear whether Dukes proposed that the class's recovery would be distributed *pro rata*, whether there would be some sort of claims procedure, based on the particular applicant's date of non-promotion, or whether class counsel would dispose of the money through a *cy pres* distribution. Regardless, the Court held that the Trial by Formula approach would violate the Rules Enabling Act because it would abridge or modify Wal–Mart's right to present affirmative defenses to individual backpay determinations. Dukes, 131 S.Ct. at 2561.

Davis v. Cintas Corp., 717 F.3d 476, 486 n.2 (6th Cir. 2013).

Similarly, a Magistrate Judge of the United States District Court for the Southern District of New York described the "trial by formula" method disapproved in Dukes in the following terms:

> Specifically, the Supreme Court rejected a "Trial by Formula," in which the plaintiffs would hold a trial for a sample set of class members' claims of sex discrimination and then multiple the average backpay award to determine the class-wide recovery without further individualized proceedings. Under this proposal, Wal–Mart would have been denied its right to litigate its defenses to individual claims of discrimination, as liability for all but the sample set would have never been tried. Chipotle contends that Dukes requires individualized discovery of opt-in plaintiffs so that it can litigate its individualized defenses, and that the denial of this information might, in fact, render certification inappropriate.
>
> ***
>
> In Dukes, the Supreme Court focused on the need for a common contention that is capable of class-wide resolution: "Without some glue holding the alleged reasons [behind all of Wal–Mart's individual employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." Dukes, 131 S.Ct. at 2552 (emphasis in original).

Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 188, 191 (S.D.N.Y. 2014) (citations and quotation marks omitted).

In this case, contrary to Wal-Mart's assertions, the now-disapproved "trial by formula" process at issue in Dukes was not at work here, because there was no initial or prior adjudication of Wal-Mart's liability to a subset of employees that would then be extrapolated to the rest of the class. Instead, the extrapolation evidence Wal-Mart challenges in this appeal involves the amount of damages to the class as a whole. By contrast, the evidence of Wal-Mart's liability to the entire class for breach of contract and WPCL violations was established at trial by presentation of Wal-Mart's own universal employment and wage policies, as well as its own business records and internal audits. These records were sufficient to support the factfinder's determination that there was an extensive pattern of discrepancies between the number and duration of breaks earned and the number and duration of breaks taken. Both parties had ample opportunity to present evidence to explain these discrepancies, i.e., to show that the discrepancies were or were not evidence of class-wide wage-and-hour violations. Thus, Wal-Mart's claim that it was denied due process fails.

Also, in Dukes, the class-action was brought for alleged violations of Title VII of the Civil Rights Act of 1964, and specifically alleged sexual discrimination in the hiring and promotion of female workers. The evidence in Dukes showed that Wal-Mart had an express policy prohibiting sex discrimination. Importantly, although some Wal-Mart managers applied their own subjective gender biases in making hiring and promotion decisions, some did not. Thus, the High Court ruled that the element of class commonality was lacking because the required showing of "significant proof" that Wal-Mart operated under a "general policy of discrimination" was "entirely absent." Dukes, __ U.S. at __, 131 S.Ct. at 2553. The Court noted that the expert opinion evidence of a

"general policy of discrimination" offered by the plaintiffs could not assess "whether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking." Id.

In this case, where systemic wage-and-hour violations were asserted, evidence was presented by appellees that, if believed, supported an inference that Wal-Mart managers company-wide were pressured to increase profits and decrease payroll by understaffing stores through the preferred scheduling system, and that these factors, including the managers' annual bonus compensation program, impeded the ability of employees, across the board, to take scheduled, promised, paid rest breaks. The lack of proof of class commonality present in Dukes is not present here.

Turning to Comcast v. Behrend, which Wal-Mart also cites here, the question for review before the High Court in that case was "[w]hether a district court may certify a class action without resolving whether the plaintiff class had introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." __ U.S. at __, 133 S. Ct. at 1431 n.4. In that matter, two million Comcast customers comprised the class alleging various antitrust violations. The Court noted that both the U.S. District Court for the Eastern District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit had perceived no need for the plaintiffs to "tie each theory of antitrust impact" to a calculation of damages. Id. at __, 133 S.Ct. at 1433. The Court determined that the District Court and the Court of Appeals had entirely ignored the "first step" of a "damages study," which requires "the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." Id. at __, 133 S.Ct. at 1435 (italics in original) (citing Federal Judicial Center Reference Manual on Scientific Evidence 432 (3d ed. 2011). Because the damages methodology used in Behrend identified damages that were not the result

of the specific antitrust violation for which the class had been certified, the High Court reversed the order upholding the class certification. Id. at __, 133 S.Ct. at 1434-35.

The Behrend Court, did, however, recognize that where a theory of liability is capable of class-wide proof, calculations of damages need not be exact. Id. at __, 133 S.Ct. at 1433-34. Indeed, as one federal district court has noted, one takeaway from the Supreme Court's decisions in this area is that "the propriety of class certification in wage and hour cases that involve recordkeeping violations should be assessed in light of the relaxed burden of proving damages." Gomez v. Tyson Foods, Inc., 295 F.R.D. 397, 400 (D. Neb. 2013) (citing Behrend and Dukes). It is also well-settled that when an employer fails to keep complete records of hours, employees may prove their hours through representative testimony. Anderson v. Mt. Clemens Pottery Co., Inc., 328 U.S. 680, 688 (1946), superseded by statute on other grounds. "[E]ven where the lack of accurate records grows out of a *bona fide* mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances." Id. One federal Circuit Court has observed that "[a] rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating federal [and state] law." Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 69 (2d Cir. 1997) (citing Mt. Clemens, 328 U.S. at 687).

Unlike the plaintiffs in Behrend, who failed to translate the legal theory of their harm into an analysis of its economic impact, Appellees here offered data and analysis from Wal-Mart's own business records, including time clock and cashier log-in data, to support their claim of damages related to systemic wage and hour violations. Wal-Mart responds now, as it did at trial and on direct appeal, that the time clock and cash

register log-in data do not necessarily reflect that breaks were missed or shortened. Nevertheless, by advancing this argument, Wal-Mart impliedly acknowledges that its record-keeping has been incomplete, and it cannot now avoid the relaxed burden of proving damages through extrapolation. Mt. Clemens.

The essence of Wal-Mart's appeal is its assertion that the class-action device, in this instance, had "run amok," resulting in a "trial by formula" during which Appellees' requirement to prove the essential elements of their claims as to each class member was eliminated. Appellants' Brief at 18. Indeed, Wal-Mart seems to suggest that the class claims of breach of contract and unjust enrichment could only be properly proven by an individual examination of the 187,979 class members to determine whether each had been promised paid breaks that they were then forced to miss, or partially work through, and whether each had, or had not, been forced to work off-the-clock. Relatedly, Wal-Mart suggests that any determination of damages is only proper on an individual class member basis, and that any tabulation of damages across-the-board would violate due process. The Court disagrees.[11]

There was a single, central, common issue of liability here: whether Wal-Mart failed to compensate its employees in accordance with its own written policies. On that question, both parties presented evidence. Wal-Mart's liability was proven on a class-wide basis. Damages were assessed based on a computation of the average rate of an

---

[11] We are persuaded by the observation of the federal district court in Jackson v. Bloomberg, 298 F.R.D. 152, 168 (S.D.N.Y. 2014), which declined to read into Behrend "a principle that would fundamentally undermine the use of the class action vehicle in the wage-and-hour context." In addition, we subscribe to what appears to be the prevailing view that Dukes does not bar class actions in wage and hour cases. See Ensor v. Chipotle Mexican Grill, Inc., 300 F.R.D. 188, 191 (S.D.N.Y. 2014) ("The weight of authority rejects the argument that Dukes bars certification in wage and hour cases."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases).

employee's pay (about eight dollars per hour) multiplied by the number of hours for which pay should have been received but was not. In our view, this was not a case of "trial by formula" or of a class action "run amok." Accordingly, the judgment of the Superior Court is affirmed.

Jurisdiction relinquished.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille, Messrs. Justice Eakin and Baer and Madame Justice Todd join the opinion.

Mr. Justice Saylor files a dissenting opinion.