# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jarrett Coleman,            :
           Appellant      :
                         :
          v.                :
                         :   No. 1416 C.D. 2022
Parkland School District      :   Argued: September 11, 2023

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                             FILED: November 8, 2023

Jarrett Coleman (Coleman) appeals from the Lehigh County Common Pleas Court's (trial court) November 17, 2022 order granting Parkland School District's (District) Motion for Summary Judgment (Motion) relative to *Coleman v. Parkland School District*, Case No. 2021-C-2666 (Case No. 2666), and denying the Motion relative to *Coleman v. Parkland School District*, Case No. 2021-C-2990 (Case No. 2990). Coleman presents three issues for this Court's review: (1) whether the trial court erred as a matter of law by granting summary judgment in the District's favor and against Coleman under the Sunshine Act;[1] (2) whether the trial court erred by not invalidating the September 1, 2022 to August 31, 2025 collective bargaining agreement (CBA) between the District and the Parkland Education Association (Association), where the District violated the Sunshine Act by voting to approve it; and (3) whether the trial court erred by not awarding attorney's fees and/or costs in Coleman's favor. After review, this Court affirms in part and reverses in part.

---

[1] 65 Pa.C.S. §§ 701-716.

## Background

The parties do not dispute the facts. Coleman is a District resident. On or about October 25, 2021, the District issued a public notice which stated that the Parkland School Board (School Board) would conduct a meeting on October 26, 2021,[2] and published the agenda therefor, which did not include the School Board's consideration of the CBA. However, the School Board's October 26, 2021 meeting minutes reflect:

> [School Board member Lisa] Roth [(Mrs. Roth)] made a motion to add the following agenda item, seconded by Mr. Kennedy,[3] to approve and authorize the School Board President to execute[,] and the School Board Secretary to attest[,] the [CBA].
>
> Mrs. Roth explained that this agenda item was not previously listed on the agenda for tonight's meeting because the [CBA] had not yet been voted upon by the [] Association until today[,] when the teachers voted to approve [it]. To list the [CBA] on the [School] Board's agenda prior to the teacher's [sic] vote would have been premature and inappropriate.

Reproduced Record (R.R.) at 174a; *see also* R.R. at 37a-38a. Thereafter, a majority of the School Board voted to authorize the School Board President to execute the CBA, and the School Board Secretary to attest it. *See* R.R. at 178a.

On November 2, 2021, Coleman filed a Complaint for Declaratory Judgment and Injunctive Relief for Violation of the Sunshine Act in the trial court relative to Case No. 2666 challenging the School Board's October 26, 2021 action (Case No. 2666 Complaint). Therein, Coleman asked the trial court to: (1) declare that the District violated Section 712.1(e) of the Sunshine Act, 65 Pa.C.S. § 712.1(e),

---

[2] According to Coleman, "[t]he October 26, 2021 meeting[] happened to be the last meeting prior to the November 2, 2021 Municipal Election in which four seats on the [School] Board were up for election." Coleman Br. at 10.

[3] Mr. Kennedy's full name does not appear in the record before this Court.

2

by voting to amend the agenda at the October 26, 2021 School Board meeting and approve the CBA; (2) declare the CBA invalid; (3) permanently enjoin the District from taking official action concerning matters involving the expenditure of funds or entering into contracts that are not listed on a publicly posted agenda at least 24 hours in advance of a public meeting; and (4) award Coleman reasonable attorney's fees and costs.[4]  The District filed an answer and new matter to the Case No. 2666 Complaint asserting a counterclaim for attorney's fees and costs.

At its November 16, 2021 meeting, after providing public notice thereof, the School Board voted to ratify its October 26, 2021 action on the CBA. On December 6, 2021, Coleman filed a complaint in the trial court relative to Case No. 2990 related to the Board's November 16, 2021 ratification (Case No. 2990 Complaint).[5]  The District filed an answer and new matter to the Case No. 2990 Complaint asserting a counterclaim for attorney's fees and costs.

On January 24, 2022, the trial court consolidated Coleman's actions for the limited purpose of discovery and trial.  On September 1, 2022, the District filed the Motion, which Coleman opposed on September 28, 2022.  On November 17, 2022, the trial court granted the Motion with respect to Case No. 2666, but denied the Motion concerning Case No. 2990.  By separate order, the trial court denied

---

[4] The District filed preliminary objections to Coleman's Case No. 2666 Complaint, which the trial court overruled on April 11, 2022.

[5] Therein, Coleman alleged that the District: (1) violated Section 710.1(a) of the Sunshine Act, 65 Pa.C.S. § 710.1(a) (relating to public participation), by taking official action to vote on two motions that arose during the November 16, 2021 meeting without first allowing for public comment; (2) violated Section 710.1(c) of the Sunshine Act, 65 Pa. C.S. § 710.1(c), by ruling Coleman out of order and preventing him from raising a perceived Sunshine Act objection during the meeting; and (3) violated Section 712.1(e)(1) of the Sunshine Act, 65 Pa.C.S. § 712.1(e)(1), by failing to post an amended agenda within one business day of the November 16, 2021 meeting to include two motions that were voted upon during the meeting that were not listed on the posted agenda.  The District filed preliminary objections to Coleman's Case No. 2990 Complaint, which the trial court overruled on April 11, 2022.

Coleman's cross-motion for summary judgment in Case No. 2990. On November 18, 2022, Coleman discontinued Case No. 2990.

On December 16, 2022, Coleman appealed to this Court, challenging the grant of summary judgment in the District's favor in Case No. 2666.[6] The Pennsylvania NewsMedia Association (PNA) filed an *amicus curiae* brief in support of Coleman's position. On January 10, 2023, the trial court issued a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), adopting the reasoning set forth in its November 17, 2022 order.[7]

## Discussion

Initially,

> [s]ummary judgment may be granted only in those cases where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. [Pa.] State Ethics Comm['n]*, . . . 723 A.2d 174, 176 ([Pa.] 1999). On a

---

[6] The standard of review of the grant of summary judgment is *de novo*. *See, e.g.*, *Pyeritz v. Commonwealth* . . . , . . . 32 A.3d 687, 692 ([Pa.] 2011). []The scope of review over an order granting summary judgment is "limited to a determination of whether the trial court abused its discretion or committed an error of law." *Bowles v. [Se.] [Pa.] Transp[.] Auth[.]*, . . . 581 A.2d 700, 702-03 ([Pa. Cmwlth.] 1990).

*Texiera v. Commonwealth*, 284 A.3d 1279, 1283 n.2 (Pa. Cmwlth. 2022). In addition, this Court's scope of review in cases presenting questions of law involving statutory interpretation is plenary and the standard of review is *de novo*. *See Commonwealth v. Koger*, 295 A.3d 699 (Pa. 2023).

On January 6, 2023, the District filed a motion to quash Coleman's appeal as premature because the trial court did not dispose of all claims (i.e., the District's counterclaims for attorney's fees). On January 20, 2023, Coleman opposed the motion to quash. After argument, on March 21, 2023, this Court denied the motion to quash on the basis that the trial court unambiguously denied the District's counterclaim for attorney's fees. This Court further concluded in its March 21, 2023 Memorandum Opinion that the trial court's ruling relative to Case No. 2666 is the only matter currently before this Court on appeal.

[7] The trial court did not order Coleman to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

> motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved in his favor. *Id.*

*Texiera v. Commonwealth*, 284 A.3d 1279, 1283 n.3 (Pa. Cmwlth. 2022).

## 1. Statutory Interpretation

Here, the parties' sole challenge is whether the District was entitled to judgment in its favor as a matter of law relative to Case No. 2666. Specifically, they offer contradictory interpretations of Section 712.1 of the Sunshine Act.

The backdrop for the parties' disagreement is Section 702(b) of the Sunshine Act, in which the General Assembly "declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this chapter." 65 Pa.C.S. § 702(b). To that end, Section 709 of the Sunshine Act requires, in pertinent part:

> **(a) Meetings.**—An agency shall give public notice of its first regular meeting of each calendar or fiscal year not less than three days in advance of the meeting and shall give public notice of the schedule of its remaining regular meetings. An agency shall give public notice of each special meeting or each rescheduled regular or special meeting at least 24 hours in advance of the time of the convening of the meeting specified in the notice. Public notice is not required in the case of an emergency meeting or a conference. . . .
>
> **(b) Notice.**—With respect to any provision of this chapter that requires public notice to be given by a certain date, the agency, to satisfy its legal obligation, must give the notice in time to allow it to be published or circulated within the political subdivision where the principal office of the agency is located or the meeting will occur before the date of the specified meeting.

65 Pa.C.S. § 709.

In Senate Bill 554 (SB 554), S.B. 554, 205th General Assembly, Regular Session (Pa. 2021-2022), the General Assembly amended Section 709 of the Sunshine Act to add subsection (c.1), effective August 30, 2021, which mandates, in relevant part:

> **Notification of agency business to be considered.--**
>
> (1) In addition to any public notice required under this section, **an agency shall provide the following notification of agency business to be considered at a meeting as follows**:
>
>> (i) If the agency has a publicly accessible Internet website, the agency **shall post the agenda**, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, **on the website no later than 24 hours in advance of the time of the convening of the meeting**.[8]

65 Pa.C.S. § 709(c.1)(1)(i) (text emphasis added).

Section 712.1 of the Sunshine Act, also added in SB 554, effective August 30, 2021, states:

> **(a) Official action.--**<u>Except as provided in subsection</u> (b) [(relating to emergency business)], **(c)** [(business arising within 24 hours before the meeting)], (d) [(relating to business arising during the meeting),] **or (e)** [(relating to agenda changes)], **an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under [S]ection 709(c.1) [of the Sunshine Act]** (relating to public notice).
>
> **(b) Emergency business.--**An agency may take official action at a regularly scheduled meeting or an emergency meeting on a matter of agency business relating to a real or potential emergency involving a clear and present

---

[8] The agency must also post the agenda at the meeting location and the agency's principal office, and make copies thereof available to the public at the meeting. *See* Section 709(c.1)(1)(ii), (iii), 65 Pa.C.S. § 709(c.1)(1)(ii), (iii).

danger to life or property regardless of whether public notice was given for the meeting.

**(c) Business arising within 24 hours before meeting.**--An agency may take official action on a matter of agency business that is not listed on a meeting agenda if:

>(1) the matter arises or is brought to the attention of the agency **within the 24-hour period prior to the meeting**; **and**

>(2) **the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement by the agency**.

**(d) Business arising during meeting.--**If, during the conduct of a meeting, **a resident or taxpayer brings a matter of agency business** that is not listed on the meeting agenda to the attention of the agency, the agency may take official action to refer the matter to staff, if applicable, for the purpose of researching the matter for inclusion on the agenda of a future meeting, or, **if the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement**, the agency may take official action on the matter.

**(e) Changes to agenda.--**

>(1) Upon majority vote of the individuals present and voting during the conduct of a meeting, **an agency may add a matter of agency business to the agenda**. The reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted to make the changes to the agenda. **The agency may subsequently take official action on the matter added to the agenda**. The agency shall post the amended agenda on the agency's publicly accessible Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed.
>
>. . . .

7

**(f) Minutes.--**If action is taken upon a matter of agency business added to the agenda under this section, the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition[,] and the announced reasons for the addition.

65 Pa.C.S. § 712.1 (bold text and underline emphasis added).

The issue before this Court is whether by including the phrase, "Except as provided in subsection (b) [(relating to emergency business)], (c) [(business arising within 24 hours before the meeting)], (d) [(relating to business arising during the meeting),] **or (e)** [(relating to agenda changes),]" 65 Pa.C.S. § 712.1(a) (emphasis added), the General Assembly intended there to be three or four exceptions to the general prohibition against agency action on matters that do not appear on a timely posted pre-meeting agenda.

Coleman argues that the School Board amended its agenda at the October 26, 2021 meeting, and took action on the CBA, despite that the CBA did not meet the criteria of any of the *three* exceptions: (1) emergency business; (2) de minimis business not involving fund expenditure or entering into a contract that arises within the 24 hours preceding the meeting; or (3) de minimis business raised by a resident/taxpayer during the meeting that does not involve fund expenditure or entering into a contract. Coleman contends that Section 712.1(e) of the Sunshine Act merely states the procedure by which the School Board could amend its agenda when one of the three exceptions applied. Coleman asserts that, "[a]s the Sunshine Act does not provide a mechanism to amend an agenda to take official action outside of Section 712.1(e) [of the Sunshine Act], the word 'or' should be read as 'and' in Section 712.1(a) [of the Sunshine Act] based on the plain language in the surrounding context." Coleman Br. at 24.

The District retorts that the connector *or* in Section 712.1(a) of the Sunshine Act signals that the statutory elements are met when any one is satisfied

8

and, thus, that provision contains *four* exceptions to the general rule: (1) emergency business; (2) de minimis business not involving fund expenditure or entering into a contract that arises within the 24 hours preceding the meeting; (3) de minimis business raised by a resident/taxpayer during the meeting that does not involve fund expenditure or entering into a contract; or (4) changes to the agenda - and the School Board complied with the latter on October 26, 2021. The District asserts that "[a]ny other interpretation requires the Court to re-write the statute by changing the word 'or' to 'and.'"[9] District Br. at 18.

The trial court agreed with the District, concluding that a plain reading of Section 712.l(a) of the Sunshine Act's text allows only one reasonable interpretation of the statute - that "use of [the] conjunctive 'or' between subsections (d) and (e) indicates subsections (b), (c), (d), and (e) of [Section] 712.1 [of the Sunshine Act] shall be used alternatively to one another." Trial Ct. Op. at 3.

The law is well settled:

> As in all matters of statutory interpretation, the Statutory Construction Act of 1972 ([SCA]), 1 Pa.C.S. §§ 1501-1991, guides our analysis. The [SCA] provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." [Section 1921(a) of the SCA,] 1 Pa.C.S. § 1921(a). Generally, the best expression of the General Assembly's intent "is found in the statute's plain language." *Commonwealth v. Howard, . . .* 257 A.3d 1217, 1222 ([Pa.] 2021). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded

---

[9] The District cites the Washington County Common Pleas Court's *Schmid v. Ringgold School District* (C.P. Wash. No. 2022-1028, filed Dec. 9, 2022) decision, *see* District Br. at 16, wherein that court held: "[Section] 712.1 [of the Sunshine Act] is properly read to include four [] circumstances where any agency may take official action on a matter that was not posted or distributed according to [Section] 709(c.1) [of the Sunshine Act]." District Br. App. A, slip op. at 11. Although they may be cited for their persuasive value, "[this] Court is not bound by decisions of a court of common pleas[.]" *William Penn Sch. Dist. v. Dep't of Educ.*, 243 A.3d 252, 266 n.7 (Pa. Cmwlth. 2020) (Cohn Jubelirer, J., single-Judge op.).

9

under the pretext of pursuing its spirit." [Section 1921(b) of the SCA,] 1 Pa.C.S. § 1921(b). Moreover, "we should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, . . . 52 A.3d 241, 245 ([Pa.] 2012). Only in instances of ambiguous statutory language "may courts consider statutory factors to discern legislative intent." *Howard*, 257 A.3d at 1222. Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the SCA] shall be construed according to such peculiar and appropriate meaning or definition." [Section 1903(a) of the SCA,] 1 Pa.C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" *Berner v. Montour Twp. Zoning Hearing Bd.*, . . . 217 A.3d 238, 245 ([Pa.] 2019) (quoting [Section 1922(1)-(2) of the SCA,] 1 Pa.C.S. § 1922(1)-(2)).

*Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022). Accordingly, "[courts] will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous." *Commonwealth v. Diodoro*, 970 A.2d 1100, 1106 (Pa. 2009).

In Section 712.1(a) of the Sunshine Act, the connector *or* clearly precedes the reference to Section 712.1(e) of the Sunshine Act, and this Court acknowledges that *or* is ordinarily intended in statutes to be disjunctive. *See Elite Indus., Inc. v. Pa. Pub. Util. Comm'n*, 832 A.2d 428 (Pa. 2003). This Court also agrees that there is no statement in Section 712.1 subsections (b), (c), and (d) of the Sunshine Act requiring those exceptions to be conditioned upon following the procedure set forth in subsection (e). However, the Pennsylvania Supreme Court has explained:

10

By way of further explanation on the inclusive or exclusive nature of the word "or," we offer the following:

> The word "or" can be construed as exclusive or inclusive, leading to confusion about which variant of "or" applies in a given context. Legal sources differ on which meaning of "or" is authoritative. In the realm of symbolic logic, the exclusive "or," otherwise known as the exclusive disjunction, means that only one of the propositions or terms joined by the disjunction can be true. "Jim is eight or nine years old" is exemplary of an exclusive disjunction because only one proposition in the disjunction can be true. On the other hand, an inclusive disjunction assumes that either one or both of the terms or propositions on either side of the disjunction are true. A sentence like, "X will call or email Y," does not necessarily denote an exclusive disjunction, but rather, it leaves open the possibility that X could call *and* email Y. Essentially, an inclusive disjunction allows the possibility of either option, or both, which is also the literal meaning of *and/or*. The difficulty with competing versions of a disjunction is that when used in plain English, a reader must dissect what type of disjunction it is, leaving more room for confusion.

> Ira P. Robbins, *"And/or" and the Proper Use of Legal Language*, 77 M[D]. L. R[EV]. 311, 318-19 (2018) (footnotes omitted).

*Commonwealth v. Griffin*, 207 A.3d 827, 832 n.4 (Pa. 2019). Our Supreme Court has further declared: "**[T]he conjunction 'or' must be given its ordinarily disjunctive meaning unless such a construction would lead to an absurd result**."

*Elite Indus., Inc.*, 832 A.2d at 431 (emphasis added).

> Moreover, guided by the **presumption that the General Assembly intends the entire statute to be effective**, **we must read statutory provisions in context**, **construing various sections in conjunction with and by reference to one another**. [*See* Section] 1922(2) [of the SCA].

11

> Unless the statute expressly indicates that one section nullifies another, we must not interpret it in such a manner. *Id.*; *see Kegerise v. Delgrande*, . . . 183 A.3d 997, 1006 ([Pa.] 2018).

*City of Harrisburg v. Prince*, 219 A.3d 602, 610 (Pa. 2019) (emphasis added). Further, this Court "cannot assume that the legislature intended any words to be mere surplusage." *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018). Finally, "if we can reconcile seemingly inconsistent provisions, we must do so." *Commonwealth v. Gurung*, 239 A.3d 187, 192 (Pa. Super. 2020).

Here, because the term *or* in Section 712.l(a) of the Sunshine Act is capable of two meanings, this Court must look beyond the statute's words to determine the General Assembly's intent. *See Diodoro*. Reading the General Assembly's "or (e)" reference in Section 712.l(a) of the Sunshine Act as disjunctive, as the District argues, would lead to an absurd result. Namely, the General Assembly intended with the Sunshine Act's pre-meeting posting mandate, *see* 65 Pa.C.S. § 709(c.1)(1), "to insure the right of its citizens to have notice of . . . all meetings of agencies at which any agency business is discussed or acted upon . . . ." 65 Pa.C.S. § 702(b).

In his March 17, 2021 Memorandum, State Senator Patrick J. Stefano (Senator Stefano) represented to "[a]ll Senate members[,]" that he would be introducing legislation

> **[t]o strengthen the Sunshine Act's intent and ensure that the public can be fully informed when following governmental proceedings**, this legislation . . . will **require that agencies make their meeting agendas available to the public**. Further, **once the agenda has been finalized and posted for the public the agency may not take any official action on any item that is not listed**

**on the notice**, <u>**except in emergency situations or to consider matters that are de minimis in nature**</u>.[10]

R.R. at 40a (bold and underline emphasis added). Senator Stefano thereafter introduced SB 554, entitled: "An Act amending Title 65 (Public Officers) of the Pennsylvania Consolidated Statutes, in open meetings, further providing for public notice and providing for notification of agency business required and exceptions."[11]

---

[10] This Court has held:

> Although lawmakers' statements during debate are generally not dispositive of legislative intent, they may properly be considered as part of the contemporaneous legislative history. *Arneson v. Wolf*, 117 A.3d 374, 384 n.10 (Pa. Cmwlth.), *aff'd*, . . . 124 A.3d 1225 ([Pa.] 2015); *see also B*[*d.*] *of Revision of Taxes*[*, City of Phila.*] *v. City of Phila*[.], . . . 4 A.3d 610, 624 n.10 ([Pa.] 2010) (noting that although legislators' statements during floor debate are not dispositive, they can be instructive to our analysis and persuasive evidence of the General Assembly's intent).

*POM of Pa., LLC v. Dep't of Rev.*, 221 A.3d 717, 734 n.16 (Pa. Cmwlth. 2019); *see also Phila. Fed'n of Teachers v. Sch. Dist. of Phila.*, 109 A.3d 298, 315 (Pa. Cmwlth. 2015), *aff'd on other grounds sub nom. Phila. Fed'n of Teachers, AFT, Local 3, AFL-CIO v. Sch. Dist. of Phila.*, 144 A.3d 1281 (Pa. 2016) ("[W]hile statements made by legislators during the enactment process are not dispositive of legislative intent, they may be properly considered as part of the contemporaneous legislative history." *Wash*[.] *v. Baxter*, . . . 719 A.2d 733, 738 ([Pa.] 1998) (citation omitted)"); *DeLellis v. Borough of Verona*, 660 A.2d 25, 31 n.11 (Pa. 1995) ("[T]he floor remarks of [the act's] sponsor is nonetheless instructive to our analysis and persuasive evidence that [Coleman's] argument more closely indicates the General Assembly's intent that [Section 712.l(a) of the Sunshine Act contains three exceptions, not four]." "Here, the legislative history is persuasive and serves to confirm our reading of the statute's language." *Bd. of Revision of Taxes*, 4 A.3d at 625 n.10.

[11] *See* 2021 Senate Legislative Journal at 595-96, www.legis.state.pa.us/WU01/LI/SJ/2021/0/Sj20210608.pdf#page=5 (last visited Nov. 7, 2023). On June 9, 2021, Senator Stefano described:

> [SB 554] amends the Sunshine Act to further increase government transparency. . . . As the public is becoming increasingly more interested in government, I believe [it has] a right to know in advance what is to be considered at a public meeting so [it has] an opportunity to engage in the issues that matter most to [it].

2021 Senate Legislative Journal at 623-24, www.legis.state.pa.us/WU01/LI/SJ/2021/0/Sj20210609.pdf#page=9 (last visited Nov. 7, 2023).

13

Consistent with Senator Stefano's statement in the March 17, 2021 Memorandum, Section 712.1 subsection (b) of the Sunshine Act addresses "emergency situations," and subsections (c) and (d) expressly refer to "matters that are de minimis in nature" and do not involve the expenditure of funds or entering into a contract. R.R. at 40a. Subsection (e) differs in that it does not reference either "emergency situations" or "matters that are de minimis in nature" and does not involve the expenditure of funds or entering into a contract. *Id.*

Section 712.1 subsections (b), (c), and (d) of the Sunshine Act differ from subsection (e) in that each of the former specify that an "agency may take official action" when the circumstances in subsections (b), (c), and (d) arise, 65 Pa.C.S. § 712.1(b), (c), (d), without mandating how the agency must go about amending the agenda to include those changes. Conversely, subsection (e) describes how the agency may add agency business to the agenda at a meeting, without in any way limiting the situations in which an agency may do so. *See* 65 Pa.C.S. § 712.1(e). In addition, subsection (e) specifies the procedure an agency must follow to amend the agenda *during* the meeting, making it akin to subsection (f), which specifies the procedure an agency must follow relative to an agenda change *after* the meeting, i.e., requiring inclusion of the amendment in the meeting minutes. *See* 65 Pa.C.S. § 712.1(f).

Finally, interpreting Section 712.1(e) of the Sunshine Act as a fourth exception would allow Section 712.1(e) of the Sunshine Act to swallow the entire rule that the agency shall post the agenda 24 hours in advance of a meeting. Section 712.1(e) of the Sunshine Act would allow an agency, without advance public notice, to amend its agenda and take official action on ***any matter*** - including those that are

---

The House State Government Committee read a summary of SB 554 during its June 22, 2021 meeting. *See* www.pahousegop.com/Video/State-Government/Page-7, at minutes 5:02 to 6:00 (last visited Nov. 7, 2023). The Committee did not clarify whether there were three or four exceptions.

not de minimis and involve the expenditure of funds and/or entering into a contract - at **any meeting**, as long as the agency majority agrees. There would be no reason for the General Assembly to have included subsections (b), (c), and (d) in Section 712.1 of the Sunshine Act; they would be mere surplusage. Moreover, such a result would be absurd in light of the specificity the General Assembly included in Section 712.1(b), (c), and (d) of the Sunshine Act, and the General Assembly's clear intention to generally prohibit last-minute agenda changes so that the public has proper advance notice and the opportunity to attend meetings where decisions on fund expenditures and/or contracts are made.

Based on this Court's reading, Section 712.1 of the Sunshine Act offers *three* exceptions to the general prohibition that allow agency action on matters not previously listed in the meeting agenda - in cases of (1) emergency business, (2) de minimis business not involving fund expenditure or entering into a contract that arises within the 24 hours preceding the meeting, and (3) de minimis business raised by a resident/taxpayer during the meeting that does not involve fund expenditure or entering into a contract. *See* 65 Pa.C.S. § 712.1(b)-(d). Like Section 712.1(f) of the Sunshine Act, Section 712.1(e) of the Sunshine Act is a procedural mechanism instructing the agency about *how* to go about publicly amending a meeting agenda when one of the three exceptions in Section 712.1 of the Sunshine Act applies. Unless one of the three listed exceptions applied, the School Board could not vote on the CBA at the October 26, 2021 meeting.

Because the CBA became ripe for the School Board's action within the 24 hours that preceded the October 26, 2021 meeting, the exception in Section 712.l(c) of the Sunshine Act applied. However, under Section 712.l(c)(2) of the Sunshine Act, the School Board could only take official action if "the matter [was also] de minimis in nature and [did] not involve the expenditure of funds or entering into a contract or agreement by the agency." 65 Pa.C.S. § 712.1(c)(2). The District's

15

October 26, 2021 press release declared that the CBA included a 2.9% salary increase for approximately 680 Association members, plus stipend salaries for certain positions, which the District admitted constituted fund expenditure. *See* R.R. at 37a; *see also* Original Record (O.R.) Item 16 (Coleman Br. in Support of Motion for Summary Judgment), Ex. A (Coleman Request for Admissions) ¶ 6; O.R. Item 16, Ex. B (District Answer to Coleman Request for Admissions) ¶ 6. Because the School Board's approval of the CBA involved expenditure of significant funds and/or entering into a contract without prior public notice, the School Board violated Section 712.1(c) of the Sunshine Act at its October 26, 2021 meeting. Accordingly, the trial court erred as a matter of law by granting summary judgment in the District's favor and against Coleman under Section 712.1(e) of the Sunshine Act.

### 2. The CBA

Coleman also asserts that the trial court erred by not invalidating the CBA because the District violated the Sunshine Act in voting to approve it on October 26, 2021. He claims that the School Board cannot retroactively approve an official action taken before public notice was provided.

Section 713 of the Sunshine Act provides, in relevant part:

> Should the court determine that the meeting did not meet the requirements of this chapter, it **may in its discretion** find that any or all official action taken at the meeting shall be invalid. Should the court determine that the meeting met the requirements of this chapter, all official action taken at the meeting shall be fully effective.

65 Pa.C.S. § 713 (emphasis added). Failure to comply with the Sunshine Act does not automatically render the CBA null and void. Rather, "a court's decision to invalidate an agency's action for violation of the Sunshine Act is discretionary, not

16

obligatory." *Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 120 (Pa. Cmwlth. 2020).

Moreover, this Court has held: "[S]hort of fraud . . . , most any Sunshine Act infraction could [be] cured by subsequent ratification at a public meeting. Otherwise, governmental action in an area would be gridlocked with no possible way of being cured once a Sunshine Act violation was found to have occurred." *Lawrence Cnty. v. Brenner*, 582 A.2d 79, 84 (Pa. Cmwlth. 1990) (citation omitted); *see also Picone v. Bangor Area Sch. Dist.*, 936 A.2d 556, 563 (Pa. Cmwlth. 2007) ("[T]his Court has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act.").

Here, Coleman did not claim that the School Board's actions were in any way fraudulent.[12] In addition, based on objections to the School Board's action on the CBA at the October 26, 2021 meeting, the School Board provided timely pre-meeting public notice that it would again vote on the CBA at its November 16, 2021 meeting.[13] *See* R.R. at 43a, 86a; *see also* O.R. Item 16 (Coleman Br. in Support of

---

[12] Coleman's concerns regarding the CBA stemmed from his perception of a potential conflict of interest for School Board members whose family members stood to benefit from the CBA. *See* O.R. Item 16 at 8.

[13] *See* November 16, 2021 School Board agenda, which reflected:

> To clarify any concern that the School Board did not comply with the Sunshine Act when it added an agenda item at the time of its public meeting on October 26, 2021, by majority vote of the School Board without posting the agenda item at least 24 hours before the meeting, the School Board has posted this agenda item at least 24 hours before this meeting and hereby takes official action to ratify and confirm its official action previously taken on October 26, 2021, where the Board approved and authorized the School Board President to execute and School Board Secretary to attest the [CBA]. Although this official action to ratify and confirm its previous vote is being taken herein, the School Board believes that the addition of the agenda item at the time of its meeting on October 26, 2021, and

17

Motion for Summary Judgment) at 6 (the School Board posted the November 16, 2021 meeting agenda on November 15, 2021). At its November 16, 2021 meeting, the School Board afforded the public, including Coleman, the chance to comment on the CBA and, thereafter, reaffirmed its October 26, 2021 vote on the CBA. *See* R.R. at 85a-87a; *see also* O.R. Item 16 at 6-8.[14] Under such circumstances, the School Board's November 16, 2021 reaffirmation vote, at a regularly scheduled meeting after public notice, cured its October 26, 2021 Sunshine Act violation relating to the CBA.[15] Accordingly, the trial court did not err by refusing to invalidate the CBA.

### 3. Attorney's Fees and Costs

Coleman finally contends that the trial court erred by not awarding him attorney's fees and/or costs.

Section 714.1 of the Sunshine Act declares:

> If the court determines that an agency willfully or with wanton disregard violated a provision of this chapter, in whole or in part, the court shall award the prevailing party reasonable attorney fees and costs of litigation or an appropriate portion of the fees and costs. If the court finds that the legal challenge was of a frivolous nature or was brought with no substantial justification, the court shall award the prevailing party reasonable attorney fees and costs of litigation or an appropriate portion of the fees and costs.

65 Pa.C.S. § 714.1.

---

the official action taken to approve the CBA was in full compliance with the Sunshine Act.

go.boarddocs.com/pa/parkland/Board.nsf/Public (last visited Nov. 7, 2023).

[14] *See also* www.youtube.com/watch?v=alXARwBjaCY at minutes 22:08 to 24:00, 24:27 to 26:00, 26:33 to 28:03 (last visited Nov. 7, 2023).

[15] This Court disagrees with Coleman's claim that Section 712.1 of the Sunshine Act abrogates prior case law permitting agencies to ratify and confirm past actions.

Here, Coleman provided no evidence that the District's legal challenge was made in willful or wanton disregard of the law or was frivolous. Rather, the District raised an issue of first impression related to the interpretation of a new statutory provision, which justified the District filing the Motion. Accordingly, the trial court did not err by declining to award Coleman attorney's fees and costs.

## Conclusion

Based on the foregoing, this Court affirms the portions of the trial court's order denying the CBA's invalidation and attorney's fees and costs. This Court reverses the portion of the trial court's order granting the Motion in the District's favor and against Coleman based on the trial court's erroneous interpretation of Section 712.1 of the Sunshine Act.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jarrett Coleman,
     Appellant
     v.

Parkland School District

:
:
:
:
:
:  No. 1416 C.D. 2022
:

## O R D E R

AND NOW, this 8th day of November, 2023, the portions of the Lehigh County Common Pleas Court's (trial court) November 17, 2022 order denying Jarrett Coleman's (Coleman) requests relative to *Coleman v. Parkland School District*, Case No. 2021-C-2666 (Case No. 2666), that the trial court invalidate the September 1, 2022 to August 31, 2025 collective bargaining agreement between the Parkland School District (District) and the Parkland Education Association, and for related attorney's fees and costs are AFFIRMED.

The portion of the trial court's order granting the District's Motion for Summary Judgment relative to Case No. 2666 in the District's favor and against Coleman based on the trial court's interpretation of Section 712.1 of the Sunshine Act, 65 Pa.C.S. § 712.1, is REVERSED.

         _____
         ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jarrett Coleman,
               Appellant         :     No.  1416 C.D. 2022
                                     :
          v.                :     Argued: September 11, 2023
                                     :
Parkland School District       :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

CONCURRING/DISSENTING OPINION
BY JUDGE McCULLOUGH               FILED: November 8, 2023

        Although I concur with the Majority's thoughtful opinion to the extent that it affirms, in part, the November 17, 2022 order of the Lehigh County Court of Common Pleas (trial court), *see Coleman v. Parkland School District* (Pa. Cmwlth., No. 1416 C.D. 2022, filed November 8, 2023) (Majority), I respectfully cannot agree with the Majority's partial reversal of the trial court based on what I believe is the Majority's incorrect interpretation of Section 712.1 of the Sunshine Act,[1] 65 Pa. C.S. § 712.1. To that portion of the Majority's holding, I must respectfully dissent.

        Because this case requires us to discern the meaning of a statute, we begin with general principles of statutory interpretation. "The plain language of a statute is the best indication of the General Assembly's intent, and where the statutory language is clear and unambiguous, we must give effect to the plain language thereof." *Philadelphia Gas Works v. Pennsylvania Public Utility Commission*, 249 A.3d 963, 970 (Pa. 2021). Pursuant to the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. §§ 1501-1991, "[w]hen the words of a statute are clear

---

[1] 65 Pa. C.S. §§ 701-706.

and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b).  Only where a statute's words are not explicit may we consider the several indicators of legislative intent enumerated in Section 1921(c) of the SCA, including legislative history.  *See* 1 Pa. C.S. § 1921(c)(7).

The issue before us involves certain exceptions to the public notice requirements of Subsection 709(c.1) of the Sunshine Act, 65 Pa. C.S. § 709(c.1).[2] Those exceptions reside in Section 712.1 of the Sunshine Act, which aptly is titled "**Notification of agency business required and exceptions**."  65 Pa. C.S. § 712.1. The exceptions in Section 712.1 delineate when an agency may take official action

---

[2] Subsection 709(c.1) provides, in pertinent part, as follows:

> **(c.1) Notification of agency business to be considered.**--
>
> > (1) In addition to any public notice required under this section, an agency shall provide the following notification of agency business to be considered at a meeting as follows:
> >
> > > (i) If the agency has a publicly accessible Internet website, the agency shall post the agenda, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, on the website no later than 24 hours in advance of the time of the convening of the meeting.
> > >
> > > (ii) The agency shall post the agenda, which includes a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting, at the location of the meeting and at the principal office of the agency.
> > >
> > > (iii) The agency shall make available to individuals in attendance at the meeting copies of the agenda, which include a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting.
>
> . . . .

65 Pa. C.S. § 709(c.1).

PAM-2

on a matter that was not, in advance of an agency meeting, published in an agenda. By virtue of the title of Section 712.1 itself, it is clear that the legislature foresaw the need to provide exceptions to this notice requirement to permit an agency to take swift official action in certain enumerated circumstances. Section 712.1 provides as follows:

> **712.1. Notification of agency business required and exceptions**
>
> **(a) Official action.**--**Except as provided in subsection (b), (c), (d) <u>or</u> (e)**, an agency **may not take official action**[3] on a matter of agency business at a meeting if the matter was not included in the notification required under [Subs]ection 709(c.1) (relating to public notice).
>
> **(b) Emergency business.**--An agency **may take official action** at a regularly scheduled meeting or an emergency meeting on a matter of agency business relating to a real or potential emergency involving a clear and present danger to life or property **regardless of whether public notice was given for the meeting.**
>
> **(c) Business arising within 24 hours before meeting.**--An agency **may take official action** on a matter of agency business **that is <u>not</u> listed on a meeting agenda** if:
>
>> (1) the matter arises or is brought to the attention of the agency within the 24-hour period prior to the meeting; and

---

[3] "Official Action" is defined in Section 703 of the Sunshine Act as follows:

**"Official action."**

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.
>
> (2) The establishment of policy by an agency.
>
> (3) The decisions on agency business made by an agency.
>
> (4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. C.S. § 703.

PAM-3

(2) the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement by the agency.

**(d) Business arising during meeting.**--If, during the conduct of a meeting, a resident or taxpayer brings a matter of agency business that is not listed on the meeting agenda to the attention of the agency, the agency may take official action to refer the matter to staff, if applicable, for the purpose of researching the matter for inclusion on the agenda of a future meeting, or, if the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement, the agency may take official action on the matter.

**(e) Changes to agenda.**--

(1) Upon majority vote of the individuals present and voting during the conduct of a meeting, an agency may add a matter of agency business to the agenda. The reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted to make the changes to the agenda. The agency may subsequently take official action on the matter added to the agenda. The agency shall post the amended agenda on the agency's publicly accessible Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed.

(2) This subsection shall not apply to a conference or a working session under section 707 (relating to exceptions to open meetings) or an executive session under section 708 (relating to executive sessions).

**(f) Minutes.**--If action is taken upon a matter of agency business added to the agenda under this section, the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition.

65 Pa. C.S. § 712.1 (emphasis added).

**Subsection 712.1(a)** is an overarching provision that, **except as provided in Subsections 712.1(b), (c), (d) or (e),** precludes an agency from taking official action on a matter **unless** advance public notice is given in accordance with Subsection 709(c.1) of the Sunshine Act. We assume that the General Assembly intended what it said, choosing here to use the word "or" in a natural, disjunctive sense that gives independent effect to the distinct purposes that the General Assembly wrote into the plain language of each of Subsections 712.1(b)-(e).

**Subsection 712.1(b)** is an exception for **emergencies,** real or potential, that present a **clear and present danger** to life or property. It permits an agency to take official action at a regularly scheduled or emergency meeting, **regardless of whether public notice was given**, on any matter presenting a clear and present danger to life or property. Subsection 712.1(b) says nothing else about notice, compliance with Subsection 712.1(e), or a requirement that such emergent matters be added to the agency agenda *prior* to official action. It simply says that an agency "may take official action" on such a matter. Practically speaking, requiring compliance with Subsection 712.1(e) as a prerequisite to official action in this context would be undesirable at best, and dangerous at worst. It is unthinkable that the Sunshine Act would authorize the calling and conducting of an emergency meeting without any prior notice to the public[4] and then hamstring the agency's ability to act on emergency matters if a majority of the members present at the meeting do not agree to methodically add each of the emergency matters to the meeting agenda prior to taking any official action.

**Subsection 712.1(c)** permits official action on agency business that (1) arises or is brought to the agency's attention **within 24 hours prior to a meeting**,

---

[4] An agency may call an emergency meeting without prior public notice. *See* 65 Pa. C.S. § 709(a).

(2) **is not listed** on an agency agenda, (3) is *de minimis* in nature, and (4) does **not involve the expenditure** of agency funds **or entry into a contract**. Subsection 712.1(c), like Subsection 712.1(b), says nothing about notice, Subsection 712.1(e), or any requirement that the item of business be added to the agency's agenda *prior* to the taking of official action. It simply says that the agency "may take official action" if the above criteria are satisfied, expressly where the item is **not** listed on an agenda. The Majority's added requirement of compliance with Subsection 712.1(e) prior to any official action thus would render both the purpose and language of this exception meaningless.

   **Subsection 712.1(d)** pertains to matters brought to the agency's attention during a meeting by a **resident or taxpayer**, but not by an agency member. It once again addresses matters that **are not listed** on the agenda and states that the agency "may take official action" on such matters in two respects: (1) the agency may take official action to refer such matters to agency staff for research or **inclusion on a future agenda**; **or** (2) the agency may take official action on the substance of the matter if it is (a) *de minimis* and (b) **does not involve the expenditure** of agency funds or the agency's **entry into a contract** or agreement. Again, Subsection 712.1(d) says nothing about notice, Subsection 712.1(e), or amendments to the agenda *prior* to official action. It plainly is intended to permit quick and efficient action on extemporaneous matters raised by the attendees at a meeting. The Majority's requirement that each and every such matter be added to the agency's agenda at the meeting before it could be even referred to staff *for inclusion on the*

*agenda of a future meeting* would grind agency meetings to a halt. Such an unreasonable result could not have been intended by the General Assembly.[5]

Subsection 712.1(e), which **does not reference any of the exceptions in Subsections 712.1(b)-(d),** provides that an agency "**may** take official action" on **a matter that is added to the agenda by majority vote** of all the **agency members present at the meeting.** The reasons for the amendment must be announced prior to any vote on the amendment and, if the amendment is successful, the revised agenda must be posted on the agency's website and at the agency's office the day after the meeting. Subsection 712.1(e) is drafted in **permissive,** not mandatory, terms, and it does not require an item of proposed business to first satisfy the criteria under one of the exceptions in Subsections 712.1(b)-(d). **It is a standalone, remedial exception** that permits the agency to correct whatever caused an item of business to be omitted from the agenda published in accordance with Subsection 709(c.1).

Finally, under **Subsection 712.1(f),** *if* an agenda is amended during an agency meeting *and* the **agency acts** on the added items of business, the agency must publish the amended agenda by the next business day, and the minutes must reflect "the substance of the matter added, the vote on the addition, and the announced reasons for the addition." 65 Pa. C.S. § 712.1(f). Subsection 712.1(f), by its plain language, **is not a prerequisite** to official action under Subsections 712.1(b)-(d). It imposes after-the-fact requirements for when an agency both amends its agenda and takes official action on the amendments, which can only

---

[5] When interpreting statutes, we presume that the General Assembly did not intend absurd or unreasonable results, and we accordingly must read them "in the light of reason and common sense." *Vellon v. Department of Transportation*, *Bureau of Driver Licensing*, 292 A.3d 882, 890 (Pa. 2023).

occur through the mechanism in Subsection 712.1(e). Thus, although Subsection 712.1(f) refers to amendments "under this section," that language can plausibly reference only Subsection 712.1(e). Where an agency takes official action under Subsections 712.1(b)-(d), the agency technically need not thereafter comply with Subsection 712.1(f). That does not mean, however, that there would be no record of agency action taken under Subsections 712.1(b)-(d). Rather, the action would, as a matter of course, be reflected in the agency minutes prepared and later approved for that meeting. *See* Section 706 of the Sunshine Act, 65 Pa. C.S. § 706.[6]

Although the Majority acknowledges that we must read a statute to ascertain and effectuate the intention of the General Assembly as encased in the statute's plain language, the Majority nevertheless concludes that the word "or" in Subsection 712.1(a) is capable of more than one meaning and is, therefore, ambiguous. (Majority, slip op. at 12.) The Majority bases its conclusion, in large part, on an academic distinction between "exclusive" and "inclusive" disjunctions, both of which the Majority concludes could be intended for the word "or" in Subsection 712.1(a). The Majority then references a small excerpt of legislative history to interpret "or" to actually mean "and," which it concludes is necessary to

---

[6] Section 706 provides as follows:

> Written minutes shall be kept of all open meetings of agencies. The minutes shall include:
>
> (1) The date, time and place of the meeting.
>
> (2) The names of members present.
>
> (3) **The substance of all official actions** and a record by individual member of the roll call votes taken.
>
> (4) The names of all citizens who appeared officially and the subject of their testimony.

65 Pa. C.S. § 706 (emphasis added).

PAM-8

further legislative intent and avoid absurd results. *Id.* But, as shown above, there is no potential double meaning for "or" in Subsection 712.1(a) if the provisions of Subsections 712.1(b)-(e) are parsed carefully and interpreted as they are written. Each serves a distinct purpose, and the intent of the General Assembly in enacting four separate exceptions to the public notice requirement is, I believe, manifest.[7] Only the interpretation and application of Section 712.1 as it is written, and not as judicially modified, will express the intent of the General Assembly and avoid results that could be viewed as absurd and nonsensical.[8]

---

[7] Even if considered, the legislative history that exists for these amendments to the Sunshine Act would not resolve any purported ambiguity in Subsection 712.1(a). Notably, the comments from Senator Stefano quoted by the Majority reference, at most, only the exceptions in Subsections 712.1(b) and (c). *See* Majority, slip. op. at 12-13. Senator Stefano refers to emergency and *de minimis* matters and makes no reference to the exception in Subsection 712.1(d), which permits an agency to act on matters raised by attendees at the meeting. This nondescript and incomplete statement about Senator Stefano's intention in sponsoring the amendments does not help us in rightly interpreting the very specific as-enacted language of Subsections 712.1(a)-(e).

Further, there is contrary legislative history from the House State Government Committee indicating that the amendments to Section 712.1 were intended to provide for four, not three, exceptions to the agenda publication rule. *See* Video from the June 22, 2021 House State Government Committee Meeting, minutes 5:02 to 6:00 (available at https://www.pahousegop.com/Video/State-Government/Page-7) (last visited November 8, 2023). The Majority indicates that the Committee "did not clarify" whether the amendments created three or four exceptions to the agenda publication rule. (Majority, slip. op. at 13-14 n. 11.) However, the language used to introduce the amendments refers to four exceptions in words far clearer than those in Senator Stefano's general comments. In any event, the irreconcilability of these two pieces of legislative history only further enunciates why we should not, because we need not, resort to considering it here.

[8] The Majority also speculates that Subsection 712.1(e), if interpreted as a standalone exception, would broadly "swallow" all of the other exceptions, dispense with the purpose of the Sunshine Act, and, accordingly, lead to an absurd result. (Majority, slip. op. at 14-15.) But Subsection 712.1(e) contains its own safeguards and requires an agency to comply with a very specific procedure for amending agendas. Importantly, it provides no mechanism for *drafting* an agenda during a meeting. If an agenda is not published in advance in accordance with Subsection 709(c.1), Subsection (e) cannot be utilized by an agency to create one in the first instance at the

Clearly there are irregularities in how Section 712.1 has been drafted and enacted by the General Assembly. The Majority offers what otherwise would be a rational method of creating exceptions to Subsection 709(c.1)'s publication requirements. Nevertheless, and notwithstanding that the Majority offers an interpretation reflecting what the General Assembly *might have* intended, "[i]t is not unknown for a statute to contain words which are contrary to legislative intent. Where such text is clear and unambiguous, we are generally not at liberty to overlook the plain wording in deference to what the [l]egislature clearly *meant* to say." *Vellon*, 292 A.3d at 894 (Mundy, J., concurring) (citation omitted) (emphasis in original). Accordingly, I would apply Subsections 712.1(a)-(e) of the Sunshine Act as they are written and conclude that Appellee Parkland School District satisfied the independent exception to the Subsection 709(c.1) publication requirement as enacted by the General Assembly in Subsection 712.1(e). Because the District did not violate the Sunshine Act, I would affirm the trial court in total.

_____
PATRICIA A. MCCULLOUGH, Judge

---

meeting. The Majority's fear that agencies would use Subsection 712.1(e) to surreptitiously hold surprise meetings or meetings with many surprise items of business simply is not justified by Subsection 712.1(e)'s language.